STATE OF CONNECTICUT *v.* LAWRENCE P. TULLY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 4, 1973—decision released March 5, 1974

*John C. Parker,* for the appellant (defendant).

*Thomas E. Minogue, Jr.,* assistant state's attorney, with whom, on the brief, was *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a jury trial, the defendant was found guilty of the illegal possession of drugs in violation of §§ 19-480 (b) and 19-481 (a) of the General Statutes. The sole issue presented on his appeal to this court is whether the removal of heroin and marihuana from the automobile which the defendant was driving and the subsequent

admission of them into evidence were in violation of the fourth amendment of the constitution of the United States.

The facts are not disputed. On September 29, 1970, at approximately 11:50 p.m., Officer Bruce Scott, while on routine patrol as an officer of the Wilton police department, observed an automobile operated by the defendant. Scott became suspicious because of the slow speed of the automobile, for there had been several acts of vandalism in the area. Furthermore, the automobile appeared to cross the yellow line dividing the lanes. Scott stopped the vehicle in the driveway leading to the Miller School parking lot and, upon Scott's request, the defendant handed Scott a Connecticut registration for the vehicle and a California driver's license. A check with police headquarters revealed that the defendant's Connecticut driver's license was under suspension. Scott advised the defendant that he was going to issue him a summons and that the defendant would not be permitted to operate the automobile any further. Thereupon the defendant parked the automobile in the empty school parking lot and Scott transported him in the patrol car to the Wilton police headquarters, where the defendant was issued a summons for driving while his license was under suspension. Since the defendant was unable to obtain anyone to remove the vehicle from the school parking lot, it was decided to leave it there until morning, at which time the defendant would be able to obtain its removal. At the defendant's request, Scott drove him to a friend's house in Wilton. Scott then returned to the Miller School where he conducted a routine check of the doors to the building. Thereafter he stopped at the automobile parked by the defendant in the school yard

and noticed that the vent window on the driver's side of the automobile was missing. Looking into the car, Scott observed a guitar handle protruding from beneath a blanket on the rear seat. He entered the unlocked vehicle to remove the guitar and take it to headquarters for the night for safekeeping because of the recent vandalism in the area. While reaching for the guitar, Scott saw on the rear floor of the vehicle a brown shopping bag which was open at the top. Looking into the bag, Scott observed several plastic baggies containing a substance which appeared to be marihuana. Adjacent to the bag was a knapsack which Scott opened and found to contain, beneath some articles of clothing, a brick wrapped in yellow paper with green leaves protruding, eight glassine bags of a white substance, and three cubes, individually wrapped in foil, containing a brown substance. These packages later were determined to contain marihuana and heroin. At a hearing on the defendant's motion to suppress as evidence the items removed from the bag and the knapsack, the trial court found that the items were not in plain view from the exterior of the automobile and that they were discovered by Scott only when he entered the automobile for the sole purpose of safeguarding the guitar from vandalism.

The court found that Officer Scott did not enter the defendant's vehicle pursuant to a search warrant or with the consent of the defendant or because he had probable cause to believe that the automobile contained contraband or to make an inventory pursuant to the impounding of the motor vehicle, but expressly found that he made the entry "with the purpose of removing a guitar from the motor vehicle for safe-keeping."

The defendant fully protected his claims for the exclusion of the evidence by proper objections and exceptions to the rulings of the court denying his motion to suppress and admitting the evidence for the consideration of the jury and by assignments of error addressed to these rulings.

The fourth amendment to the constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." These federal constitutional provisions are applicable to the states through operation of the due process clause of the fourteenth amendment. *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, rehearing denied, 368 U.S. 871, 82 S. Ct. 23, 7 L. Ed. 2d 72. State searches and seizures are to be judged by the same constitutional standards as exist in the federal system. *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726.

The policy underlying the warrant requirement of the fourth amendment is that the right of privacy must yield to a right of search only when the inferences of probable cause which reasonable men could draw from evidentiary facts are reviewed " 'by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " *Coolidge* v. *New Hampshire,* 403 U.S. 443, 449, 91 S. Ct. 2022, 29 L. Ed. 2d 564, rehearing denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120, quoting Mr. Justice

Jackson in *Johnson* v. *United States,* 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 2d 436. Implicit in the language of the fourth amendment is the proposition that the searches to which it refers are those that arise during the course of the policeman's function of detecting and combating criminality in the community, and that only an intrusion into an area in which an individual has a reasonable expectation of privacy, with the specific intent of discovering evidence of a crime, constitutes a "search" within the meaning of the fourth and fourteenth amendments. Cf. *Cady* v. *Dombrowski,* 413 U.S. 433, 442 n., 93 S. Ct. 2523, 37 L. Ed. 2d 706. "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." *Haerr* v. *United States,* 240 F.2d 533, 535 (5th Cir.); *United States* v. *Blackburn,* 389 F.2d 93, 95 (6th Cir.); *DiMarco* v. *Greene,* 385 F.2d 556, 561 (6th Cir.); *United States ex rel. Stacey* v. *Pate,* 324 F.2d 934, 935 (7th Cir.), cert. denied sub nom. *Stacey* v. *Pate,* 377 U.S. 937, 84 S. Ct. 1341, 12 L. Ed. 2d 299; Black, Law Dictionary (4th Ed.), p. 1518; 79 C.J.S., Searches and Seizures, § 1. The term connotes hostility between the searcher and the person whose property or possessions are being searched. *United States* v. *Haden,* 397 F.2d 460, 465 (7th Cir.). The analysis which focuses on the intent, purpose and motivation of the intrusion vis-a-vis the criminal investigatory function of a policeman is reflected somewhat in the American Law Institute's Model Code of Pre-Arraignment Procedure definition of "search" as "any intrusion . . . by an officer, under the color of authority, upon an individual's . . . property . . . for the purpose of

seizing . . . things." Proposed Official Draft No. 1, 1972, art. 210, § 210.1 (1). In *Harris* v. *United States,* 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067, the United States Supreme Court approved the use as evidence of a vehicle registration card observed by a police officer while taking an inventory of personal property in a vehicle being impounded by the police. The court there distinguished between a "search" of the automobile and measures taken to protect the vehicle and its contents. It held (p. 236): "Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker* v. *California,* 374 U.S. 23, 42–43 [83 S. Ct. 1623, 10 L. Ed. 2d 726] (1963); *United States* v. *Lee,* 274 U.S. 559 [47 S. Ct. 746, 71 L. Ed. 1202] (1927); *Hester* v. *United States,* 265 U.S. 57 [44 S. Ct. 445, 68 L. Ed. 898] (1924)." Upon such reasoning, it could well be argued that, absent a nexus between the intrusion and a specific intent to gather criminal evidence, there is no search in the constitutional sense[1] for "[p]olice officers are not required to go about their routine duties with their eyes shut." *Fagundes* v. *United States,* 340 F.2d 673, 676 (1st Cir.). There has been no consensus among jurisdictions whether similar police action to

---

[1] This precise argument was advanced in *Cady* v. *Dombrowski,* 413 U.S. 433, 442 n., 93 S. Ct. 2535, 37 L. Ed. 2d 706, but the United States Supreme Court found it unnecessary to decide the merits of the contention, since the petitioner had conceded in the Court of Appeals that the intrusion was a search and the court was of the opinion that *Harris* v. *United States,* 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067, and other decisions controlled its decision "even if the intrusion is characterized as a search."

assist a citizen is governed by fourth amendment principles. We are mindful of the admonition of the United States Supreme Court not to attribute "too much significance to an overly technical definition of 'search.'" *Terry* v. *Ohio,* 392 U.S. 1, 17–18 n.15, 88 S. Ct. 1868, 20 L. Ed. 2d 889; see note, 48 A.L.R.3d 537, 548–50. Compare *Fagundes* v. *United States,* supra, and *State* v. *Dombrowski,* 44 Wis. 2d 486, 171 N.W.2d 349, with *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 484 P.2d 84, and *State* v. *Gwinn,* 301 A.2d 291 (Del.); see also *United States* v. *Mitchell,* 458 F.2d 960 (9th Cir.) and *People* v. *Sullivan,* 29 N.Y.2d 69, 272 N.E.2d 464, and note, 48 A.L.R.3d 537. It is not necessary, however, to decide the question whether Officer Scott's conduct constituted a search in the constitutional sense since we hold that his action in entering the automobile for the purpose of removing the plainly visible guitar for safekeeping from the hazard of prevalent vandalism was a reasonable intrusion not prohibited by the fourth amendment. Cf. *United States* v. *Mitchell,* supra, 961–62.

The fourth amendment does not prohibit all searches and seizures; it forbids only those that are unreasonable. *Elkins* v. *United States,* 364 U.S. 206, 222, 80 S. Ct. 1437, 4 L. Ed. 2d 1669; *United States* v. *Rabinowitz,* 339 U.S. 56, 60, 70 S. Ct. 430, 94 L. Ed. 653. "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, rehearing denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120,

quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576. There is, however, a "constitutional difference between searches of and seizures from houses and similar structures and from vehicles [which] stems both from the ambulatory character of the latter as well as from the fact that the extensive, and often noncriminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband. Cf. *United States* v. *Biswell,* 406 U.S. 311, 313 [92 S. Ct. 1593, 32 L. Ed. 2d 87] (1972)." *Cady* v. *Dombrowski,* 413 U.S. 433, 442, 93 S. Ct. 2523, 37 L. Ed. 2d 706.[2] Warrantless searches of motor vehicles have frequently been held not to be unreasonable when (1) the search was incident to a lawful arrest (*State* v. *Cari,* 163 Conn. 174, 187, 303 A.2d 7); (2) the search was based upon probable cause to believe that the vehicle contained contraband or evidence pertaining to a crime (*Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94; *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790); (3) the search was based upon consent (see *Lewis* v. *United States,* 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312, rehearing denied, 386 U.S. 939, 87 S. Ct. 951, 17 L. Ed. 2d 811; *State* v. *Spellman,* 153 Conn. 65, 71, 212 A.2d 413); or (4) the search was conducted not to secure evidence but to

[2] One commentator has observed that "an individual's interest in privacy in his automobile is probably negligible. The greater part of the interior is constantly within the public view. Automobiles are consistently left with casual bailees who have complete control over the car for extended periods of time. Therefore, the privacy interest in the automobile may be sufficiently inferior to that of a home to justify permitting a less stringent procedure for search." Szwajkowski, "The Aftermath of Cooper v. California: Warrantless Automobile Search in Illinois," 1968 U. Ill. L.F. 401, 410.

inventory the vehicle's contents incident to its impoundment. *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730, rehearing and modification denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243; see note, 26 L. Ed. 2d 893. In the *Cooper* case, supra, the Supreme Court noted (p. 59): "We made it clear in *Preston* [v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777] that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the results might be the opposite in a search of a home, a store, or other fixed piece of property."

More recently than the aforementioned decisions, the United States Supreme Court in *Cady* v. *Dombrowski,* supra, enlarged the principle of prior justification for the initial intrusion to encompass the search of a vehicle not in police custody by sanctioning the entry by police into the locked trunk of an automobile which had been disabled in an accident and towed to a private garage. The operator of the vehicle, who was himself a police officer, was unconscious in the hospital, unable to make arrangements to have the car removed, and the police were attempting to locate the officer's service revolver. As the court stated in *Cady* (p. 448): "The Framers of the Fourth Amendment have given us only the general standard of 'unreasonableness' as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required. Very little that has been said in our previous decisions, see *Cooper* v. *California,* 386 U.S. 58 [87 S. Ct. 788, 17 L. Ed. 2d 730,

rehearing denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243] (1967), *Harris* v. *United States,* 390 U.S. 234 [88 S. Ct. 992, 19 L. Ed. 2d 1067] (1968), *Chambers* v. *Maroney,* 399 U.S. 42 [90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94], and very little that we might say here can usefully refine the language of the Amendment itself in order to evolve some detailed formula for judging cases such as this. Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." The court in *Cady* also noted that, because of the extensive regulations enacted by state and local authorities, there is a higher incidence of police–citizen contact involving automobiles than in a home or office. *Cady* v. *Dombrowski,* supra, 441. "Local police officers, unlike federal officers, frequently . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Ibid.

Several factual considerations bring the police conduct herein within the "community caretaking function" principle enunciated in the *Cady* case. First, there is no evidence that this was a general exploratory search on the part of the policeman on the pretext of protecting the defendant's property although in fact related to the processes or objectives of the criminal law. On the contrary, the court expressly found that the purpose of the officer's entry was to remove the guitar for safekeeping. Second, the automobile was parked where it

was in the otherwise vacant school parking lot because Officer Scott directed that it be parked there and informed the defendant that he would be unable to drive it any further. Third, as the court expressly found, it was decided to leave the automobile where it was "[i]nasmuch as the defendant was unable to obtain anyone to remove it." Fourth, because of the missing vent window, the vehicle was incapable of being secured in its exposure to a genuine threat of vandalism. Where "there is no indication that a search for evidence of a crime was being made . . . [and] . . . [w]here a search is conducted as a service to an individual, as in *Vauss* v. *United States,* 125 U.S. App. D.C. 228, 370 F.2d 250 (1966), evidence of a crime accidentally discovered need not be suppressed." *United States* v. *Fuller,* 277 F. Sup. 97, 100 (D. D.C.).

Since the concept of reasonableness varies in cases involving automobiles from those cases involving buildings; see *Cooper* v. *California,* supra, 59; the situation in *People* v. *Parra,* 30 Cal. App. 3d 729, 106 Cal. Rptr. 531, cert. denied, *Parra* v. *California,* 414 U.S. 1116, 94 S. Ct. 849, 38 L. Ed. 2d 743, is particularly noteworthy. In the *Parra* case, the police entered an unlocked florist shop on a Sunday night for the purpose of locating the name of the proprietor in order to secure the premises. In pursuit of this purpose, the police found heroin in a desk drawer which discovery prompted a further search of the desk revealing still more contraband. The California Court of Appeals held that the search was reasonable and not constitutionally proscribed, stating: "Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and rea-

sonably appears to the actor to be necessary for that purpose." *People* v. *Parra,* supra, 733, quoting *People* v. *Roberts,* 47 Cal. 2d 374, 377, 303 P.2d 721.

The defendant claims that Officer Scott's entry can be justified only if the vehicle was impounded and in police custody, as in *Harris* v. *United States,* 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067, and *Cooper* v. *California,* supra. In *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706, the Supreme Court has made it clear that prior justification as deemed sufficient in *Cooper* and *Harris* is not limited to situations involving custodial and bailment concepts applicable in the impoundment context. Rather, the court stated that police procedures followed by a small community as part of the caretaking function are not unreasonable simply because, in a large, metropolitan area, the responsibility of protecting the public might have been accomplished by "less intrusive means." *Cady* v. *Dombrowski,* supra, 447. A rational analysis of reasonableness requires that emphasis be placed upon the purpose and scope of the intrusion and that it not be burdened by an inflexible factual prerequisite. Wilton, Connecticut, is not the District of Columbia of the *Harris* case.

Once Officer Scott entered the defendant's motor vehicle in performance of his "community caretaking function," the ensuing seizure of the marihuana in the open brown bag was lawful under the "plain view doctrine" applicable "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564, rehearing denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120.

While the defendant has not differentiated in his basic claims between the legitimacy of the seizure of the marihuana in the open brown bag and the contraband found in the knapsack, it suffices to say that probable cause to examine the knapsack arose when the first cache in the brown bag was observed, for the vehicle was mobile and could have been removed from the scene. *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543; *Chambers* v. *Maroney,* supra.

We conclude that the trial court properly denied the defendant's motion to suppress and properly admitted into evidence the items taken from the defendant's car.

There is no error.

In this opinion SHAPIRO, LOISELLE and MACDONALD, Js., concurred.

BOGDANSKI, J. (dissenting). I believe that Officer Scott violated the fourth amendment prohibition against "unreasonable searches and seizures" when he entered and searched the defendant's automobile.

The majority opinion suggests, without, however, deciding, that Officer Scott's entry with intent to remove the guitar was not subject to fourth amendment requirements because he did not have the specific intent of seeking evidence of a crime. The fourth amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects." Invasions of the privacy of the individual do not vary in the severity of their impact with the specific intent of the intruders. In *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706, a police officer opened the trunk

of an automobile in search of a police revolver, not because he sought evidence of a crime, but simply to protect the public. The United States Supreme Court assumed that the fourth amendment governed the officer's conduct.[1] In *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, the Supreme Court held police stop-and-frisk activity within the scope of the fourth amendment and said (pp. 18–19 n.): "In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. . . . This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search' . . . . [T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. 'Search' and 'seizure' are not talismans." Similarly, in *Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930, the United States Supreme Court held that the fourth amendment governed municipal housing inspections and said (p. 530):

---

[1] In a footnote, at p. 442, the court said: "Petitioner argued before this Court that unlocking the trunk of the Ford did not constitute a 'search' within the meaning of the Fourth Amendment. The thesis is that only an intrusion, into an area in which an individual has a reasonable expectation of privacy, with the specific intent of discovering evidence of a crime constitutes a search . . . . *But see Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) . . . . We need not decide this issue. Petitioner conceded in the Court of Appeals that this intrusion was a search. Inasmuch as we believe that *Harris* and other decisions control this case even if the intrusion is characterized as a search, we need not deal with petitioner's belated contention." (Emphasis added.)

"It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." See also *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 704–6, 484 P.2d 84, holding routine police inventory searches subject to the requirements of the fourth amendment.

In *Harris* v. *United States,* 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067, the Supreme Court did not hold that entry into an automobile to remove and protect its contents did not constitute a "search" when the specific intent to discover evidence of a crime was absent. In that case, the defendant's automobile had been lawfully impounded by the police as evidence of a robbery. A police officer opened one of the car doors in order to roll up a window for the vehicle's protection. As he did so, the automobile registration card of the robbery victim became exposed to his plain view. The officer had no warrant to search the vehicle. The Supreme Court held that the registration card had not been discovered by means of an illegal search, because opening the door of a car lawfully in police custody to roll up a window with no intent to discover or seize its contents for any purpose at all was not a search within the meaning of the fourth amendment.

In the present case, Officer Scott entered the defendant's vehicle, which was not in police custody, for the purpose of removing some of its contents. I therefore conclude that his conduct was subject to the requirements of the fourth amendment. *Camara* v. *Municipal Court,* supra. The fourth amendment prohibits searches and seizures which are "unreasonable." As the majority recognizes, the funda-

mental rule is that a warrantless search of private property is per se "unreasonable" unless it is within one of a few established exceptions. *Cady* v. *Dombrowski,* supra, 439; *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, rehearing denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120; *Camara* v. *Municipal Court,* supra, 528–29.

Some of the traditional exceptions are clearly inapplicable to the police intrusion in this case. For instance, Officer Scott did not obtain the defendant's prior consent; *Lewis* v. *United States,* 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312; nor did he have probable cause to believe that the defendant's vehicle contained contraband or evidence of a crime; *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 2d 543; nor did he think that the automobile had been abandoned. *Hester* v. *United States,* 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898.

Another exception to the warrant requirement exists for a search incident to a valid arrest. *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685. But Officer Scott's entry cannot be sustained under this exception either, because the defendant had already been arrested and released when Officer Scott entered the vehicle. Even assuming that his search would have been within the permissible scope of a search incident to an arrest for driving while one's license is under suspension, "the search was too remote . . . to have been made as incidental to the arrest." *Preston* v. *United States,* 376 U.S. 364, 368, 84 S. Ct. 881, 11 L. Ed. 2d 777.

The majority opinion relies on the exception to the warrant requirement exemplified by *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d

730, rehearing denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243, and *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706. In *Cooper,* the court upheld a warrantless search of an automobile lawfully impounded as evidence of a narcotics violation and awaiting forfeiture proceedings. The police were authorized by statute to exercise complete dominion over the automobile in their custody. In *Cady* the court upheld a warrantless search of an automobile which had been disabled on the highway as the result of an accident. The automobile had been operated by a Chicago policeman who became unconscious following the accident. After the car had been lawfully removed from the highway to a private garage at the direction of the police, a police officer searched the vehicle because he reasonably believed that the car contained a police revolver and was vulnerable to intrusion by vandals. The court said that in weighing the reasonableness of the search, "two factual considerations deserve emphasis. First, the police had exercised a form of custody or control over the . . . [vehicle]. . . . Second, . . . the search of the trunk to retrieve the police revolver was 'standard procedure in . . . [that police] department,' to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." Id., 442–43.

The present case does not fall within the exception established in *Cooper* and *Cady.* The defendant's vehicle was neither impounded nor otherwise within the control or custody of the police. Officer Scott did not enter the vehicle to find evidence of a crime or to protect the public or himself, but merely to protect the defendant's personal property from the speculative danger of vandalism. And there is

nothing in the record before us to show that it was "standard procedure" in the Wilton police department to remove property from susceptible vehicles without the owners' consent.

The remaining question is whether the new exception to the warrant requirement enunciated by the majority is "reasonable" within the meaning of the fourth amendment. That question is not answered by saying that Officer Scott's intention to protect the defendant's guitar brought his conduct within the "community caretaking function" of the police articulated in *Cady*.[2] The Supreme Court did not suggest in *Cady* that any search engaged in by a policeman as part of his community caretaking duties automatically complies with the standards of the fourth amendment. "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Go-Bart Co.* v. *United States,* 282 U.S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374; *Cady* v. *Dombrowski,* supra, 440, citing *Cooper,* supra.

Most previous fourth amendment cases in which warrants have been held unnecessary have required courts to balance the individual's right to privacy against a genuine and immediate public interest, such as the detection of a crime, the discovery of evidence or contraband, or the protection of the general public or the police. The justification for the invasion of privacy in the present case is far less

---

[2] In *Cady* v. *Dombrowski,* 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706, the United States Supreme Court said: "Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

compelling. No interest of the public, nor any emergency,[3] motivated Officer Scott to enter the defendant's vehicle. There is no evidence that Officer Scott believed the guitar to be of special value. Nor had he assumed personal or official responsibility for the automobile and its contents. The trial court found that he simply intended to protect the defendant's guitar from the speculative threat of vandalism.

There is of course a general public interest in the protection of private property, but no more so than in the preservation of individual privacy. The record before us does not suggest the existence of a prevailing public expectation that police officers will remove items of value from insecure and unattended automobiles for safekeeping without the consent of the owners. The intrusions on privacy and inconvenience attending such a practice would more likely generate public dismay. Moreover, there was no evidence in the record that Officer Scott's conduct in this case was standard police procedure.

In my view, the remote risk that an individual may suffer a minor property loss does not justify a police invasion of that individual's constitutionally protected privacy where the police are not already charged with custodial responsibility[4] of the prop-

---

[3] Cf. Restatement (Second) 1 Torts §§ 197, 263. These sections legitimate entry on land in the possession of another, or trespass to the chattel of another, "if it is or is reasonably believed to be reasonable and necessary to protect the . . . property of the . . . other . . . from serious harm, unless the actor knows that the person for whose benefit he acts is unwilling that he shall do so." (Quoted from § 263.) As the comment to § 197 emphasizes, the privilege stated in these sections exists only in an emergency.

[4] I venture no opinion on the constitutional validity of "inventory searches" of vehicles lawfully in police custody. See, e.g., *Mozzetti v. Superior Court*, 4 Cal. 3d 699, 485 P.2d 84; *People v. Sullivan*, 29 N.Y.2d 69, 272 N.E.2d 464, and note, 48 A.L.R.3d 537.

erty to be safeguarded. Furthermore, by creating such an exception to the warrant requirement, without sharply delineating the circumstances to which it applies, the majority opinion may be inviting additional challenges to police credibility and more courtroom contests over the police officer's state of mind. I conclude that Officer Scott's entry and search were not constitutionally "reasonable." Accordingly, I would reverse the defendant's conviction and remand the case with direction to grant the motion to suppress.