375 So.2d 615 (1979)
The STATE of Florida, Appellant,
v.
James Leslie HUGHES and Albert Ray Hughes, Appellees.
No. 78-2217.
District Court of Appeal of Florida, Third District.
October 9, 1979.
*616 Janet Reno, State's Atty., and Milton Robbins, Asst. State's Atty., for appellant.
Solomon & Mendelow and Harold Mendelow, Miami Springs, for James Leslie Hughes.
Bennett H. Brummer, Public Defender, for Albert Ray Hughes.
Before PEARSON and SCHWARTZ, JJ., and CHAPPELL, BILL G., Associate Judge.
PER CURIAM.
The State appeals the granting of defendants' motion to suppress physical evidence which had allegedly been obtained by an illegal search and seizure. The issue raised is whether the trial court properly granted the motion, and to decide this point, we must review the facts of the case and the evidence adduced at the hearing.
At about 4:30 A.M. on July 27, 1978, Miami police officer Curtis B. Reeves, accompanied by Neighborhood Resource Specialist Meredis Roberson, was on duty performing routine patrol. Traveling north on Biscayne Boulevard, he saw a vehicle parked on the sidewalk in front of a liquor store on the southwest corner of Biscayne Boulevard and 61st Street. The hood was up on the vehicle and Albert Hughes, the owner of the vehicle, was standing with his back to the front of the vehicle watching the police car pass by. James Hughes was standing in front of the glass double swinging doors of the liquor store.
After the police car had passed, Ms. Roberson was looking back and saw James Hughes turn around, whereupon she reported to Officer Reeves that it looked as if the men were trying to break into the store because the one turning from the door had a crowbar and that he either was wearing gloves or had something on his hands making them very dark. Officer Reeves immediately made a "U-turn" and returned to the store, pausing in front only long enough for him and Ms. Roberson to see that the door had been pried. The defendants had put the hood down and left going south on Biscayne Boulevard, but they were stopped by Officer Reeves in the middle of Biscayne Boulevard before they crossed the 60th Street intersection.
Upon being stopped, the driver, Albert Hughes, stepped out of his vehicle and walked to the police car where Officer Reeves advised that he had reason to believe that a burglary had taken place and that the defendants were involved. Officer Reeves then patted down Albert Hughes and placed him in the police vehicle, then performing the same procedure on the passenger, James Hughes. After calling on his radio for backup units and taking the keys from defendants' vehicle, Officer Reeves drove the defendants back to the liquor store, less than one block away.
Upon confirming that the lock on the liquor store had, in fact, been pried loose from its original position, though the door would not open all the way, Officer Reeves formally arrested the defendants. He then walked back to defendants' vehicle which had continuously remained within his view, intending to drive it back to the liquor store.
As Officer Reeves got into the vehicle, he saw on the floorboard two brown cotton gloves and part of a crowbar which was sticking out from under the front seat. The elapsed time from when he had stopped *617 defendants' vehicle was only a matter of minutes.
Defendant, Albert Hughes, testified that his car had stalled with a dead battery, and that he and his brother, James, pushed it off the street to the liquor store. They then flagged down a passing motorist who gave them a boost with jumper cables which Albert had in the car. He stated that it looked like the door to the liquor store had already been pried when they arrived. Twice he denied that he had a crowbar in the car, but upon further cross-examination, he admitted knowledge that one was there but denied ownership. He further denied any knowledge as to ownership of the gloves.
The trial judge made findings of fact that at the time of the formal arrests of the defendants in front of the liquor store, there was probable cause to arrest the defendants and to search their automobile, but since the arrests took place approximately one block away from their vehicle and because there were no exigent circumstances, that court held that a warrantless search could not be justified.
With all respect to the trial judge, we do not believe the circumstances justified the legal conclusion that there was an unreasonable search and seizure requiring the evidence to be suppressed. In fact, we have found nothing to establish that a search took place.
It is not a search to observe and to seize what is so placed where it may be seen by an officer who is where he has a legal right to be. Brant v. State, 349 So.2d 674 (Fla. 3d DCA 1977). If the initial intrusion of the police in impounding a vehicle is reasonable and lawful, the seizure of incriminating evidence in plain view would not violate the Fourth Amendment. United States v. Sifuentes, 504 F.2d 845 (4th Cir.1974). The criteria required to be met in order to support a warrantless search and seizure under this plain view doctrine were enumerated in United States v. Diaz, 577 F.2d 821, 823 (2d Cir.1978) as:
1. The agents must be lawfully on the premises;
2. The discovery must be inadvertent;
3. Its incriminating nature must be immediately apparent.
The testimony revealed that Officer Reeves entered the vehicle, not for the purpose of searching it, but to drive it a portion of a city block back to the liquor store. When he sat in the car, those specific items earlier called to his attention by Ms. Roberson, a pair of gloves and a crowbar, were plainly visible and subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Thus the suppressed evidence would not be subject to Fourth Amendment protection unless Officer Reeves had no legal right to be in defendants' car. Hornblower v. State, 351 So.2d 716 (Fla. 1977). This point we must examine.
Testimony revealed that defendants' vehicle was stopped in an intersection of Biscayne Boulevard, that the windows were open and the doors unlocked. Both occupants were under arrest, and the car was in police custody. Under such circumstances, any law enforcement officer would be held responsible to secure the crime scene, to park the car properly, and to protect the car while it was in police custody. There being no evidence that Officer Reeves entered the car to make an inventory or other search, he was acting within the scope of his legal duties in meeting his responsibilities. In doing so, he came across incriminating evidence. Harris v. United States, supra. Therefore, we hold that the crowbar and a pair of gloves were discovered and subsequently seized under the "plain view doctrine".
It appears that by stipulation, a third glove was added to the list of items sought to be suppressed during the hearing. Since the record is silent as to the discovery and seizure of this item, it cannot be included in our review here. Considering, however, that much argument and emphasis has been based on the issue that a warrantless search incident to arrest would be too remote in time and place because the defendants were *618 not formally arrested in the immediate vicinity of their automobile, we make limited observations here that might prove helpful.
No matter how the facts are construed, the defendants were placed under custodial arrest immediately upon exiting their vehicle. At that time Officer Reeves had sufficient probable cause to place them under formal arrest, but he delayed doing so only long enough to reconfirm his prior observations of the liquor store door. It is clear that he had a reasonable or founded suspicion of the presence of criminal activity when he ordered defendants from their car. McClure v. State, 358 So.2d 1187 (Fla.2d DCA 1978). Whether the defendants were initially detained pending investigation or immediately placed under formal arrest should make no difference.
The Federal Constitution does not forbid all searches and seizures but only unreasonable searches and seizures. Boim v. State, 194 So.2d 313 (Fla.3d DCA 1967). Notwithstanding the facts that defendants were in custody and some distance from their car, upon Officer Reeves' discovery of incriminating evidence under the "plain view doctrine" as held herein, and where no circumstances have been shown which indicate that a law enforcement official employed a purposeful scheme to infringe upon defendants' constitutional rights, a further search and seizure could be constitutionally done without first obtaining a warrant. Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Sheff v. State, 329 So.2d 270 (Fla. 1976); State v. Redding, 362 So.2d 170 (Fla.2d DCA 1978); State v. Browning, 233 So.2d 866 (Fla.2d DCA 1970).
We cannot concur with the view that the validity of a warrantless search, conducted as an incident to arrest, would be forfeited because a formal arrest was not made until a few minutes after initial detention and within the same block, defendants' vehicle having remained within view of the arresting officer at all times. McNeary v. Stone, 482 F.2d 804 (9th Cir.1973), cert. denied, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 478 (1973).
For the reasons stated and upon the authorities cited, the order suppressing evidence is reversed and remanded.
Reversed and remanded.