378 So.2d 82 (1979)
James A. COBB, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-868.
District Court of Appeal of Florida, Third District.
December 18, 1979.
Rehearing Denied January 18, 1980.
Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, for appellant.
Jim Smith, Atty Gen., and Susan C. Minor, Asst. Atty. Gen., for appellee.
Before HENDRY, BARKDULL and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Reserving the right to challenge on appeal the denial of his motion to suppress the contraband in question, the defendant pled nolo contendere to separate felony charges of possession of marijuana and of methaqualone with intent to sell. We affirm the marijuana, but reverse the methaqualone conviction.
*83 On February 4, 1979, the defendant's two-door Toyota was properly stopped by officer Barbara Thomas of the Hialeah Gardens police for a routine traffic offense. When a check revealed that he was driving with a suspended license, Cobb was placed under arrest for that offense. The officer then asked Cobb to move his car to a non-hazardous location off the roadway; the defendant complied. Cobb then left his vehicle and was told by the officer that he had two choices  either to have his car towed or to sign a release, relieving the police of any responsibility for the vehicle while it was left on the scene. The defendant chose the latter option and said that he would sign such a release. Officer Thomas then went to Cobb's car to "secure the vehicle" by rolling up the windows and locking the doors. After she began to do so, by opening the door on the driver's side, she observed a clear plastic bag, which appeared to contain marijuana, protruding from a black plastic garbage bag on the right rear floorboard. She then opened the passenger door to seize the garbage bag and the marijuana it contained,[1] and removed a briefcase which was on top of the bag. After Cobb then made incriminating statements about the contents of the bag and the briefcase, officer Thomas opened the briefcase and found among other things, a large number of quaaludes. Cobb was charged, in separate counts, with the possession of the marijuana in the garbage bag and of the methaqualone which was in the briefcase.
We affirm the marijuana conviction on the determination that the cannabis was in the "plain view" of officer Thomas and that it was therefore properly subject to the warrantless seizure which followed. In two recent decisions, State v. Hall, 376 So.2d 276 (Fla.3d DCA 1979) and State v. Hughes, 375 So.2d 615 (Fla.3d DCA 1979), this court has adopted and applied a series of standards to determine whether the "plain view" doctrine is applicable in a given factual situation. As stated in Hall:
"The tests, as applied to the facts of the present case, are:
(1) Was the officer lawfully where he had a right to be?
(2) Was the discovery inadvertent, i.e., not incident to a search?
(3) Was the incriminating nature of the contraband immediately apparent?"
Both the second and third of these tests are plainly satisfied by the facts of this case. The discovery of the marijuana in the rear of the car was entirely fortuitous and inadvertent, and the nature of the substance as contraband was obvious at once. The only real issue before us then is whether officer Thomas was where she had a "right to be" or, to put it another way, whether she was in the "scope of [her] legal duties," State v. Hughes, supra, at 375 So.2d 615, when she saw the marijuana. See also Pomerantz v. State, 372 So.2d 104 (Fla.3d DCA 1979). We hold that she was.
There is no doubt  and the appellant agrees  that the marijuana would have been subject to seizure if officer Thomas had been able to see it through an open window from a point outside the vehicle. See State v. Hall, supra; State v. Flores, 305 So.2d 292 (Fla.2d DCA 1974), cert. denied, 315 So.2d 189 (Fla. 1975). The defendant therefore contends only that she did not have the right to make the "intrusion" into his privacy involved in the act which caused the cannabis to come into her "plain view," that of opening the car door. It is undisputed, however, that the officer opened the door, not in order to search the car or even to look into it, but rather only in the process of securing the vehicle against theft, vandals and the elements during the time that it was to be left unattended on the public streets while its owner was in jail. This was no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard the defendant's own property.[2] It seems to us, therefore, that it involved just that kind of legitimate police *84 action referred to in Justice Alderman's specially concurring opinion in Mullins v. State, 366 So.2d 1162 (Fla. 1978) and in Carter v. State, 370 So.2d 1181 (Fla.4th DCA 1979). As the court appropriately stated in Carter at 370 So.2d 1183:
Justice Alderman, in his concurring opinion in the Mullins case, supra, recognizes that there are instances which may arise where legitimate contact between a police officer and a citizen may result in the citizen's arrest for a crime detected by the officer as a result of such contact. We view Deputy Batista's contact with and arrest of the Defendant as an example of the type of contact to which Justice Alderman alluded. In doing so, we accept as plausible the officer's explanation for stopping the Defendant. We detect nothing illegal or improper in the officer's actions. The officer was doing nothing more than the general public has the right to (and does) expect of its policemen in the process of their normal patrol, surveillance and investigatory duties. See State v. Price, 363 So.2d 1102 (Fla.2d DCA 1978). [e.s.]
Even more specifically, officer Thomas' actions plainly constituted a part of what the Supreme Court characterized in Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973) as the
"community caretaking functions [of local police officers which are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."
This doctrine was applied in State v. Tully, 166 Conn. 126, 348 A.2d 603 (1974) to validate the seizure of evidence found in the rear of a car during an attempt to secure and preserve property (a guitar) which had been left there. The holding at 348 A.2d 609 is pertinent and persuasive:
Several factual considerations bring the police conduct herein within the `community caretaking function' principle enunciated in the Cady case. First, there is no evidence that this was a general exploratory search on the part of the policeman on the pretext of protecting the defendant's property although in fact related to the processes or objectives of the criminal law. On the contrary, the court expressly found that the purpose of the officer's entry was to remove the guitar for safekeeping. Second, the automobile was parked where it was in the otherwise vacant school parking lot because Officer Scott directed that it be parked there and informed the defendant that he would be unable to drive it any further. Third, as the court expressly found, it was decided to leave the automobile where it was `[i]nasmuch as the defendant was unable to obtain anyone to remove it.' Fourth, because of the missing vent window, the vehicle was incapable of being secured in its exposure to a genuine threat of vandalism. Where `there is no indication that a search for evidence of a crime was being made . . [and] ... [w]here a search is conducted as a service to an individual, as in Vauss v. United States, 125 U.S.App.D.C. 228, 370 F.2d 250 (1966), evidence of a crime accidentally discovered need not be suppressed.' United States v. Fuller, 277 F. Supp. 97, 100 (D.D.C.). [e.s.]
In sum, the officer did not "unreasonably" intrude upon the defendant's "rights" in opening his car door. United States v. Prazak, 500 F.2d 1216 (9th Cir.1974); see also Howell v. State, 300 So.2d 774 (Miss. 1974); State v. Jackson, 33 Or. App. 139, 575 P.2d 1001 (1978); People v. Hering, 23 Ill. App.3d 507, 318 N.E.2d 757 (1974); People v. Russum, 41 A.D.2d 506, 344 N.Y.S.2d 103 (1973).[3] The marijuana she saw when she did so was therefore constitutionally seized.[4]
*85 We hold to the contrary as to the quaaludes taken from the briefcase. Even assuming that the officer had probable cause to believe that it contained contraband, she was not permitted to open the briefcase without first securing a warrant which authorized that action. In the controlling case of Arkansas v. Sanders, ___ U.S. ___, 99 S.Ct. 2586, 61 L.Ed.2d 235, 246 (1979), which was decided subsequent to the hearing below, it was held:
... that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where  as in the present case  the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected.
See also Ulesky v. State, 379 So.2d 121 (Fla.5th DCA 1979); Liles v. State, 375 So.2d 1094 (Fla. 1st DCA 1979); Haugland v. State, 374 So.2d 1026 (Fla.3d DCA 1979). Since both are plainly pieces of "personal luggage," Arkansas v. Sanders, supra, at note 13, we are singularly unpersuaded by the state's attempts to distinguish the brief case involved in this case from the suit case involved in Sanders. Liles v. State, supra.[5] Sanders therefore compels reversal of the conviction for possession of methaqualone.
The judgment and sentence for possession of marijuana are affirmed; the judgment and sentence for possession of methaqualone with intent to sell are reversed and the cause remanded with directions to discharge the defendant as to that count of the information.
Affirmed in part, reversed in part and remanded.
NOTES
[1] There was over four pounds of cannabis in the bag.
[2] There was no evidence that Cobb voiced, much less that the officer was aware of any objection he may have had to her action.
[3] Although the case is distinguishable on the ground that the vehicle involved there was in police custody, Harris v. United States, 390 U.S. 234, 235-236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968) strongly supports this conclusion:

Proceeding to the front door on the passenger side, the officer opened the door in order to secure the window and door. He then saw the registration card, which lay face up on the metal stripping over which the door closes.
The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not... . [T]he discovery of the card was not the result of a search of the car but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.
Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.
[4] While we agree with the appellant that the vehicle was not properly subject to an "inventory search," e.g., Granville v. State, 348 So.2d 641 (Fla.2d DCA 1977), our holding that the plain view doctrine applies amounts to a determination that no Fourth Amendment "search," as such, occurred at all. Hornblower v. State, 351 So.2d 716, 718, n. 1 (Fla. 1977); State v. Roker, 290 So.2d 525 (Fla.3d DCA 1974).
[5] The opening of the briefcase may not be justified, and the state does not try to do so, on the ground that it was incident to Cobb's arrest. See Haugland v. State, supra, at 374 So.2d 1026.