IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

     Appellant,

v.

CLARENCE E. JOHNSON,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-5289

Opinion filed January 31, 2017.

An appeal from the Circuit Court for Leon County.
Kevin J. Carroll, Judge.

Pamela Jo Bondi, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellant.

David W. Collins, Monticello, for Appellee.

WINSOR, J.

Facing what it accurately called "a highly unique factual scenario," the trial court suppressed evidence officers found in Clarence Johnson's car. This is the State's appeal. Finding no Fourth Amendment violation on the particular facts we face, we reverse.

I.

Because "the totality of the circumstances controls in cases involving the Fourth Amendment," *State v. Baez*, 894 So. 2d 115, 117 (Fla. 2004), we begin with a detailed look at the facts.

Police officers went to Johnson's house to execute an arrest warrant on charges not relevant here. Johnson was not home when they arrived, but he pulled into his driveway just as the officers were leaving. Before Johnson got out of his car, one of the officers approached and told him the news. Johnson's child was asleep in the car, and Johnson asked if the officers could arrest him beyond the child's sight. The officers accommodated that request, and Johnson got out and walked behind the car. There, Johnson was placed under arrest, handcuffed, and searched.

The officer searching Johnson found an unbound bundle of cash—some $1,188—in Johnson's pocket. The officer initially laid the cash on the trunk of Johnson's car but then "dumped" it through Johnson's open driver-side door onto the driver's seat, concerned the cash might otherwise blow away.

Not long after, and while Johnson and the officers were still in the driveway, Johnson's friend showed up to take care of Johnson's child and property. An officer asked Johnson to choose between entrusting the friend with the cash and returning the cash to Johnson's pocket, where it would be inventoried at the jail. Johnson chose the former, and an officer reached into Johnson's still-open car door to retrieve the

2

cash. As he reached inside, the officer noticed "just basically sitting there was a white powdery substance" in a baggie. The officer recognized the substance as cocaine and removed the baggie. The State charged Johnson with possession, and Johnson moved to suppress the evidence.

## II.

Johnson has not challenged the officers' authority to arrest him or to search him pursuant to that arrest. His complaint is with the officer's intrusion into his car to retrieve the cash—an intrusion Johnson contends required a warrant or probable cause. The trial court granted the motion to suppress. It recounted the facts, concluded that the "baggie was not in plain view," and ultimately determined that "this was a warrantless illegal search and seizure."

On appeal, the State does not argue that the officers had authority to search Johnson's car for evidence;[1] its argument is that under the circumstances, the officer's intrusion into the car was to protect Johnson's property, meaning no warrant or probable cause was required. Accordingly, the State argues there was no

---

[1] Nor does the State support the intrusion as a search incident to arrest. The trial court's observation that *Arizona v. Gant*, 556 U.S. 332 (2009), did not support the officers' actions is therefore beside the point. Indeed, *Gant* recognized that a search incident to arrest is not the only way to justify the warrantless entry into an automobile. *See id.* at 338, 346-47; *see also United States v. Frasher*, 632 F.3d 450, 455 (8th Cir. 2011) ("Frasher's argument that the search was not proper under *Arizona v. Gant* is misplaced because the search was not conducted incident to arrest, but rather was an inventory search. . . . *Gant* acknowledges that a search of a vehicle may still be allowed if it is shown that another warrant exception applies.").

3

Fourth Amendment violation. Furthermore, the State argues, even if there were a violation, the exclusionary rule would not apply.

III.

"The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). In a series of cases evaluating reasonableness, the United States Supreme Court has recognized that some "searches" are conducted in connection with police's "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441. In those circumstances, an intrusion that might otherwise violate the Fourth Amendment can be lawful.

In *Cady*, for example, a police officer was detained for drunk driving. *Id.* at 436. The officer's service revolver was not on him, and other officers checked to see if it was in his car—they feared if it was unsecured, it might wind up in the wrong hands. *Id.* at 436-37, 443. While in the car, they found evidence of the officer's involvement in another crime. *Id.* at 437. The officer sought to suppress that evidence based on the warrantless intrusion. *See id.* But because the intrusion was to protect the public from an unsecured service revolver—not to look for evidence of a crime—the Court held "that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." *Id.* at 448.

4

Similarly, in *Harris v. United States*, the Supreme Court found no Fourth Amendment violation when an officer discovered evidence while securing a defendant's car. 390 U.S. 234, 236 (1968). The defendant was in custody; his car was impounded. *Id.* at 235. An officer had opened a car door to roll up an open window, and he found evidence (a robbery victim's registration card) laying "face up on the metal stripping over which the door closes." *Id*. at 235-36. Under the particular circumstances of that case, "the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody." *Id.* at 236. "Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances." *Id.*; *see also Cooper v. California*, 386 U.S. 58, 61-62 (1967) (finding search of vehicle for safety of custodians not unreasonable).

This court applied these same principles in *State v. Oglesby*, 397 So. 2d 714 (Fla. 1st DCA 1981). Lawrence Oglesby, a corrections officer, suffered a medical emergency and was rushed to the hospital. *Id.* at 714. Another officer went to put some of Oglesby's personal items in his car, where the officer discovered a gun. *Id.* Other officers then removed the gun, along with bullets, mace, a knife, and a radio; they removed them for safekeeping because the car was in an area accessible to inmates. *Id*. It turned out the radio was stolen property, so Oglesby was charged with theft. *Id.* at 715. The trial court suppressed the evidence, concluding that the officers

5

found the radio through an illegal search. *Id.* But this court reversed because the "good faith action of taking into custody for storage and safekeeping" the radio and other items "was not constitutionally unreasonable under the reasoning of *Cady v. Dombrowski* and *Harris v. United States.*" *Id*. (citations omitted); *see also Cobb v. State*, 378 So. 2d 82, 83 (Fla. 3d DCA 1979) (finding no unlawful intrusion, noting the undisputed fact "that the officer opened the door, not in order to search the car or even to look into it, but rather only in the process of securing the vehicle against theft, vandals and the elements during the time that it was to be left unattended on the public streets while its owner was in jail").

Consistent with these cases, the officer's intrusion into Clarence Johnson's car was not unreasonable under the Fourth Amendment. It is undisputed that the officer reached into Clarence Johnson's open car door to retrieve Johnson's cash for safekeeping, not to search for evidence of a crime.[2] The limited intrusion "was no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard the defendant's own property." *Cobb*, 378 So. 2d at 83.

---

[2] Even if the officer's intent was disputed, the Supreme Court has made it clear that an "officer's subjective motivation is irrelevant." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

Because the officer's reach into the car did not violate the Fourth Amendment, the only remaining question is whether the officer's seizure of the cocaine once inside the car was lawful. "Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *State v. Cash*, 275 So. 2d 605, 606 (Fla. 1st DCA 1973); *accord Harris*, 390 U.S. at 236. The trial court found that the officer who reached into the car to recover the money "observed a baggie located at the back of the driver's seat toward the driver's door." This finding is consistent with both the hearing testimony and Johnson's representation in his motion to suppress. The officer necessarily would have had a clear view of the driver's seat when he reached in to retrieve cash from the driver's seat. Accordingly, if the officer had a right to reach into the car (and we hold he did), he had a right to seize the cocaine.[3]

The trial court therefore should not have suppressed the evidence.

REVERSED AND REMANDED.

OSTERHAUS, J., CONCURS; LEWIS, J., CONCURS IN RESULT WITHOUT OPINION.

---

[3] The trial court's order also found that "[t]he baggie was not in plain view and had not been seen initially when the money was placed into the vehicle for unknown reasons," and we must accept all fact findings supported by competent, substantial evidence, *Vaughn v. State*, 176 So. 3d 354, 355-56 (Fla. 1st DCA 2015). To the extent the trial court meant the baggie was not in plain view from outside the vehicle—or to the officer who dumped the cash into the vehicle—it is supported by the record. If the baggie was at the back of the driver's seat and toward the door (as the trial court found), it would not necessarily be in plain view to someone passing by, or to an officer tossing cash inside.