JOHN CAREY *vs.* ZAYRE OF BEVERLY INC.

Essex. December 5, 1974. — March 7, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* Of conviction, Impeachment of credibility. *Witness,* Impeachment.

Discussion of *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), of Rule 10 of the General Rules, 347 Mass. 809 (1964), and of a possible due process right of a defendant in special circumstances to counsel in a misdemeanor case in which only a fine is imposed. [127-133]

In a civil action, the plaintiff showed no special circumstances which would have constitutionally entitled him to be represented by counsel at three misdemeanor convictions resulting only in the imposition of fines, and there was no error in admitting the records of such convictions to impeach the plaintiff's credibility. [133]

At the trial of a tort action arising out of an accident on the defendant's premises, where the plaintiff testified that he had been arrested half a dozen times for drinking, assault and battery, and illegal operation of an automobile, and the records of six misdemeanor convictions of the plaintiff were admitted in evidence to impeach his credibility, although it was not proved that he had been represented by counsel or had waived counsel at any of the six criminal trials, and there was no error in admitting in evidence three of the records, any error in admitting in evidence the three other records did not "injuriously affect . . . [the plaintiff's] substantial rights" so as to require a new trial, particularly in the absence of any connection between any of the convictions and the accident. [134]

TORT. Writ in the Superior Court dated October 7, 1966.

The action was tried before *Thompson,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kevin M. Herlihy (H. Sage Walcott* with him) for the plaintiff.

*Philander S. Ratzkoff (Richard L. Neumeier* with him) for the defendant.

KAPLAN, J.   A jury on November 26, 1969, brought in a verdict for the defendant Zayre of Beverly Inc. in an action by the plaintiff John Carey who claimed that the defendant's negligence caused him to slip and fall on the floor of the defendant's store with resulting personal injuries.   The defendant had denied negligence on its own part and asserted contributory negligence on the part of the plaintiff.   The plaintiff is here on a bill of exceptions and the only exception pressed as a ground for reversal and a new trial is that the judge allowed the defendant to impeach the plaintiff, who testified in his own behalf, by introducing (see G. L. c. 233, § 21) the records of six misdemeanor convictions without first proving that the plaintiff had either been represented by counsel or had waived counsel at the several trials.

In his direct testimony the plaintiff testified that he had had emotional problems after his discharge from the United States Marine Corps in 1956, drank a lot, and was arrested half a dozen times for drinking, assault and battery, and illegal operation of an automobile.   During cross-examination, over the plaintiff's objection, records were admitted in evidence of six convictions of the plaintiff, all in the District Court of Eastern Essex: (1) a 1958 conviction for assault with a $25 fine; (2) a 1958 conviction for drunkenness, stemming apparently from the same incident, resulting in a $5 fine; (3) a 1959 conviction for assault on a police officer and obstruction of his performance of his duties for which the plaintiff drew a three-month suspended sentence and a year's probation; (4) a 1959 conviction for disturbing the peace, apparently arising from the same incident, which was filed; (5) a 1964 conviction for assault which resulted in a $50 fine, a three-month suspended sentence, and a year's probation;

and (6) a 1965 conviction for driving after license suspension for which he was fined $50.[1]

The error claimed in the admission of the convictions raises substantial questions, which have been briefed and argued by the parties, concerning the scope and implications of *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), which on constitutional grounds forbade the imposition of a jail sentence for a misdemeanor when an indigent defendant was not provided with and had not waived counsel. In addition, there are questions about the effect to be given Rule 10 of the General Rules, 347 Mass. 809 (1964), in effect at the time of the last two convictions, requiring the provision of counsel whenever a defendant was "charged with a crime, for which a sentence of imprisonment may be imposed," unless he waived counsel or the judge found that he was able to procure counsel himself.[2] Questions are finally raised about the possible impact of a more general due process right to counsel even in cases in which no penalty beyond a fine is imposed if special circumstances are present.

The *Argersinger* case reversed a State court denial of a writ of habeas corpus to an indigent prisoner who had been sentenced to jail for a misdemeanor without being provided with counsel. Emphasizing the importance of counsel in assuring a defendant faced with imprisonment

---

[1] The plaintiff was also questioned about a conviction for assault on a police officer in 1958 which resulted in six months' probation but no record of such a conviction was introduced. Some minor discrepancies appeared in the questioning about the sentences on the convictions numbered 4 and 5 in the text, but no complaint is made of the variances.

[2] Rule 10 of the General Rules, adopted June 29, 1964, is now in effect as S.J.C. Rule 3:10, as amended, 355 Mass. 803 (1969), and Rule 79 of the Rules of the District Courts (1965). It required that "[i]f a defendant charged with a crime, for which a sentence of imprisonment may be imposed, appears in any court without counsel, the judge shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

an adequate opportunity to defend himself, it held that "absent . . . waiver, no person may be imprisoned . . . unless he was represented by counsel at his trial." 407 U. S. at 37. *Berry* v. *Cincinnati*, 414 U. S. 29 (1973) (per curiam), held the *Argersinger* case to apply retroactively, and *Argersinger* is to be read with *Burgett* v. *Texas*, 389 U. S. 109 (1967), and *Loper* v. *Beto*, 405 U. S. 473 (1972), which make clear, at least as to felonies, that convictions obtained in violation of the right to counsel cannot be "collaterally" used by the State "to support guilt or enhance punishment for another offense," 389 U. S. at 115, and in particular cannot be used to impeach a defendant's credibility. The burden, moreover, is on the prosecution to establish that the defendant had had or waived counsel before a prior conviction may be used for such a purpose. *Gilday* v. *Commonwealth*, 355 Mass. 799 (1969). *Commonwealth* v. *Barrett*, 1 Mass. App. Ct. 332, 336 (1973).

Nevertheless the plaintiff in the present case must surmount several hurdles before he can demonstrate error on the basis of an *Argersinger* violation. The *Argersinger* case itself forbade only sentences of imprisonment. But since the plaintiff here suffered nothing worse than two suspended sentences with probation as a result of his prior convictions, his claim that even those two convictions, and hence their use in the present case, were infected with error,[3] depends upon an extension of *Argersinger* to cover such sentences as well. While it can

---

[3] There is authority, see *Morgan* v. *Juvenile & Domestic Relations Court, Halifax County, Va.* 491 F. 2d 456, 457 (4th Cir. 1974), that only the jail sentence imposed in violation of *Argersinger* must be suppressed in later prosecutions of the defendant, while the fact of the misdemeanor conviction itself may be used, as for example in a prosecution under a multiple offender statute. This view is based on the fact that, while *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), held that it was unconstitutional to deny an indigent accused of a felony a right to appointed counsel at his trial, *Argersinger*, as to those accused of misdemeanors, held only that it was unconstitutional to impose a jail sentence. See Note, Argersinger v. Hamlin and the Collateral Use of Prior Misdemeanor Convictions of Indigents

plausibly be argued that *Argersinger* should be so extended, since the person convicted may later be sent to jail on the basis of the original conviction without a new hearing on the question of his guilt, the few cases on the point are divided. Compare *State* v. *Moore,* 295 So. 2d 161, 162-163 (La. 1974) (*Argersinger* applies), with *Cottle* v. *Wainwright,* 477 F. 2d 269, 275 (5th Cir. 1973), vacated and remanded on other grounds, 414 U. S. 895 (1973) (*Argersinger* inapplicable). Cf. *Commonwealth* v. *Barrett,*      Mass. App. Ct.    ,   - (1975)[a] (uncounselled misdemeanor conviction resulting in fine may not be used to impeach defendant in subsequent trial which results in his imprisonment).

More important, however, in casting doubt on the plaintiff's *Argersinger* claim, is the fact that most of the law on exclusion of evidence that is the fruit of the government's depriving a person of his constitutional rights, deals with its exclusion in criminal cases. There is substantial authority for extending exclusionary rules to situations in which the government is opposing the individual in a noncriminal milieu. *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U. S. 693, 696 (1965). *Matter of Finn's Liquor Shop Inc.* v. *State Liquor Authy.* 24 N. Y. 2d 647, 653-655 (1969), cert. den. 396

---

Unrepresented by Counsel at Trial, 35 Ohio St. L. J. 168, 169-170 (1974). If this view were adopted, it might conceivably have been proper here to inform the jury of the plaintiff's convictions, the error consisting only in revealing the two dispositions which included probation and suspended sentences. But the majority view forbids the use of the fact of the conviction itself by the State against a defendant, see *Cottle* v. *Wainwright,* 477 F. 2d 269, 273-275 (5th Cir. 1973), vacated and remanded on other grounds, 414 U. S. 895 (1973) (error to allow use at parole revocation hearing); *O'Shea* v. *United States,* 491 F. 2d 774, 778 (1st Cir. 1974) (error to allow use in presentencing report); *State* v. *Guillotte,* 297 So. 2d 423, 425 (La. 1974) (error to allow use as prior conviction under multiple offender statute); and that view appears preferable especially in this case where the alternative is to tell the jury of the conviction and leave them free to speculate, possibly at the plaintiff's expense, as to the sentence.

[a] 322 N. E. 2d 89, 90 (1975).

U. S. 840 (1969). But the rationale is doubtful for going so far as to exclude evidence resulting from unconstitutional governmental action, including deprivation of counsel, when the evidence is sought to be used in a purely civil proceeding by one private party against another. See Note, Constitutional Exclusion of Evidence in Civil Litigation, 55 Va. L. Rev. 1484 (1969). A deterrence function is not served by exclusion on such occasions since government officials such as police involved in the violations would have no interest in the outcome of possible future civil actions; nor is exclusion necessary to preserve "judicial integrity," in the sense familiar in arguments about criminal cases, since in these civil actions the government is not being permitted to take advantage of its own lawbreaking to punish the victim of that illegality. And of course there may be beneficial governmental policies that would be aided by allowing the use of the evidence in civil cases so long as it has probative value. See Byers v. *Justice Court for the Ukiah Judicial Dist. of Mendocino County*, 71 Cal. 2d 1039, 1056-1057 (1969), vacated and remanded on other grounds, sub nom. *California* v. *Byers*, 402 U. S. 424 (1971) (motorists may be compelled to file accident reports exposing them to civil liability despite claims of self-incrimination); Note, Constitutional Exclusion of Evidence in Civil Litigation, *supra*, at 1489-1490. The result of these considerations is illustrated by our decision in *Seelig* v. *Harvard Coop. Soc.* 355 Mass. 532, 540 (1969), where we held that statements procured by the police in violation of *Miranda* or *Escobedo* rules, and hence inadmissible in a criminal case, could be used in a civil action by one private party against another.[4] To be

---

[4] Accord, *Terpstra* v. *Niagara Fire Ins. Co.* 26 N. Y. 2d 70, 72-73 (1970). See *Mitchell* v. *Silverstein*, 323 Mass. 239, 240 (1948) (party may comment on failure of his adversary in a civil case to testify); *Kaye* v. *Newhall*, 356 Mass. 300, 304-306 (1969) (party may comment on invocation of Fifth Amendment by his adversary in a civil case); *Honeycutt* v. *Aetna Ins. Co.* 510 F. 2d 340 (7th Cir.

sure, the present case involving the use of prior uncounselled convictions may be distinguished from the *Seelig* case on the ground that lack of counsel immediately calls into question the reliability and hence the probative value of the convictions used as impeaching evidence, while a violation of *Miranda* or *Escobedo* has a less direct relation to reliability. Nevertheless the argument for exclusion is weakened by its appearance in a civil context. Nor is it obvious, were a limited exclusionary rule for uncounselled convictions in violation of *Argersinger* to be adopted for civil cases, that the burden of proof to show the violation should not be put on the party seeking the exclusion, for he would usually have easier access to and greater knowledge of the facts surrounding the convictions. If the burden was so cast, the plaintiff's claim of error would fall here because he offered no such proof.

Turning now to the argument that Rule 10 of the General Rules, which required provision for counsel in the 1964 and 1965 convictions,[5] should be the basis for excluding the use of those convictions, we need only point out that the weaknesses described in the arguments for applying an exclusionary rule in civil cases are com-

---

1975) (party in civil case may use evidence unconstitutionally seized by State officials). But see *Lebel* v. *Swincicki*, 354 Mich. 427 (1958) (blood sample taken from unconscious person and given to policeman in violation of constitutional right is inadmissible in civil case).

The reluctance of courts to exclude illegally seized evidence in civil cases is further demonstrated by the division of authority as to whether a private party in a civil action may use evidence which he himself has obtained through violations of the law. Compare *Sackler* v. *Sackler*, 15 N. Y. 2d 40, 42 (1964), and *Del Presto* v. *Del Presto*, 97 N. J. Super. 446, 452-454 (1967) (admitted), with *Williams* v. *Williams*, 8 Ohio Misc. 156, 163 (Ct. Common Pleas 1966) (excluded). In such cases, it may be argued that a deterrent function would be served by excluding the evidence, and that courts should not allow private citizens to benefit from their own violations of law.

[5] The 1964 conviction for assault and the 1965 conviction for operating a motor vehicle after license suspension both carried the possibility of a jail sentence. See G. L. c. 265, § 13A; G. L. c. 90, § 23.

pounded where the violation is merely of a court rule, not of the Constitution, and again the burden of proof issue could arise.[6]

Having glimpsed at the complexities and possible infirmities in the arguments for exclusion thus far discussed, we conclude that they need not now be resolved. For, even assuming that the plaintiff were to thread his way to favorable answers on the questions posed about the application of *Argersinger* and Rule 10, he would only have shown error in the admission of three of the six conviction records — the 1959 and 1964 assault convictions, and the 1965 conviction for driving after license suspension. Any argument for exclusion of the remaining three, which predated Rule 10 and for which no

---

[6] We said in *Williams* v. *Commonwealth*, 350 Mass. 732, 734 (1966), that an uncounselled guilty plea accepted in violation of court rules could not be used, but that case concerned the revocation of probation, and thus was in the criminal context. So also our action in *MacDonnel* v. *Commonwealth*, 353 Mass. 277, 281 (1967), allowing one who had already served his sentence to "clear the record" by reversal because he had not had the benefit of counsel in violation of court rules, does not necessarily bespeak exclusion of use in civil cases where no reversal has been obtained.

There lurks in the background a possible argument that, regardless of whether the final conviction is itself admissible for impeachment, it is, in the absence of affirmative proof of compliance with Rule 10, an insufficient basis for satisfying the requirements of G. L. c. 233, § 21, permitting the use of misdemeanor conviction records more than five years old for impeachment, only if the witness "has subsequently been convicted of a crime within five years of the time of his testifying." Since the other five misdemeanor convictions were all more than five years old at the time of the trial, it could be argued that their admissibility turned on the validity of the latest conviction. But the same considerations that argue against excluding in civil cases prior convictions obtained in violation of court rules, also argue against forbidding the use of such convictions for § 21 purposes. Thus the argument for excluding all of the convictions on this basis is weak at best. Moreover, there is at least as much reason in this context to impose the burden of proof on the party seeking to prevent the use of the conviction. We note in this connection that counsel for the plaintiff evidently concluded that the argument was not of sufficient force to present — indeed he conceded at trial that "there is no question about . . . the time element" under G. L. c. 233.

more than fines were imposed, depends on the recognition and application of a due process right to counsel in misdemeanor cases in which only a fine is imposed. Mr. Justice Powell, concurring in *Argersinger,* suggested that there was such a constitutional right, at least in certain cases where special circumstances such as complex legal or factual issues were present. 407 U. S. at 63-66. Cf. *Gagnon* v. *Scarpelli,* 411 U. S. 778, 790 (1973) (right to counsel in probation revocation hearings depends on case by case analysis). This view was rejected in *Mahler* v. *Birnbaum,* 95 Idaho 14 (1972), and, while it was adopted in *Wood* v. *Superintendent Caroline Correctional Unit,* 355 F. Supp. 338, 342-344 (E. D. Va. 1973), no special circumstances were there found. Assuming for the moment that we were to recognize such a right, that would not help the plaintiff here. For, in light of our previous comments about the lesser role of exclusionary rules in civil cases, and because the party offering the conviction would normally have no convenient means of going behind the record and reconstructing the context in which the case was tried to assure himself that special circumstances were absent, we would require that the party seeking to exclude such a conviction make an initial showing of the presence of these special circumstances. Since the plaintiff here made no such showing, there was no error in allowing these three convictions in evidence.[7]

---

[7] Our result, we note for completeness, also turns on the inapplicability here of the reasoning of *Commonwealth* v. *Barrett,*        Mass. App. Ct.        (1975) (322 N. E. 2d 89 [1975]). In that case, the Appeals Court held that prior uncounselled misdemeanor convictions, themselves constitutionally proper under *Argersinger* because only fines were imposed, could not constitutionally be used for impeachment purposes in a subsequent prosecution that did lead to imprisonment. The Appeals Court reasoned that the rationale underlying *Argersinger,* that one not be imprisoned on the basis of a possibly unreliable trial result, applied even when the imprisonment was a "collateral" consequence, as when it was due to the impeaching use of the conviction at a later trial. See Note, Argersinger v. Hamlin and the Collateral use of Prior Misdemeanor Convictions of Indigents Un-

In summary, the jury had heard the plaintiff testify that he had been arrested half a dozen times for assault and battery, and illegal operation of an automobile, and the jury were further entitled to receive and consider at a minimum the records of three of the six resulting convictions. In the circumstances we believe the additional impeachment by means of showing the convictions for the two assaults, which involved suspended sentences, and for driving after license suspension, even if erroneous, was not significant. These assault convictions were repetitious of the assault conviction properly introduced; and we can doubt that the conviction for driving after license suspension could add much to whatever discredit had already accumulated. See *Subilosky* v. *Commonwealth,* 358 Mass. 390, 396-397 (1970); *Commonwealth* v. *Boudreau,* 362 Mass. 378, 382 (1972) (both concluding that sufficient impeachment by a showing of certain prior convictions had been made, so that the erroneous admission of other convictions was harmless error); *United States* v. *Penta,* 475 F. 2d 92, 96 (1st Cir. 1973), cert. den. 414 U. S. 870 (1973) (concluding that sufficient impeachment by other means had occurred and that the admission of a prior conviction, if erroneous, was harmless error). For present purposes we need not get into the general question broached by Hennessey, J., concurring in *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 682 (1974), of what rational relationship exists between prior convictions and credibility of a witness. We are the more persuaded of the correctness of our result, however, because of the absence from the record of any connection between the convictions and the substantive behavior involved in the present litigation: there was little danger that the jury would take

represented by Counsel at Trial, 35 Ohio St. L. J. 168, 182-184 (1974). But *Barrett's* application of *Argersinger* would not forbid the use of valid uncounselled misdemeanor convictions where the result is the loss of a civil suit, not imprisonment, since *Argersinger* does not forbid the imposition of fines in uncounselled trials.

the prior convictions as substantive evidence. Compare
our decision this day in *Walter* v. *Bonito, ante,* 117
(1975). Any error that may have occurred has not "in-
juriously affected the substantial rights of the parties," to
use the language of G. L. c. 231, § 132, governing the
granting of new trials for the improper admission of evi-
dence in civil cases, and the result must be

*Exceptions overruled.*