**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kurt Ernest HELLMAN,
Defendant-Appellant.**

No. 76–3268.

United States Court of Appeals,
Ninth Circuit.

June 24, 1977.

James C. Jagger, of Diment, Jagger & Billings, Eugene, Or., for defendant-appellant.

Tommy Hawk, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before MERRILL and SNEED, Circuit Judges, and BLUMENFELD,* District Judge.

* Honorable M. Joseph Blumenfeld, United States District Judge of the District of Connecticut, sitting by designation.

## OPINION

MERRILL, Circuit Judge:

This appeal is taken from judgment of conviction of several counts of mail fraud involving the use of credit cards, and of using a false and assumed name in promotion of a scheme to defraud, all in violation of 18 U.S.C. §§ 1341 and 1342. The sole issue presented is whether denial of a motion to suppress evidence was error.

Appellant was arrested in Eugene, Oregon, pursuant to a parole violator warrant. At the time of arrest his car was parked partially blocking a driveway of an oil company's fuel yard. The car was issued a citation for blocking the driveway and impounded on the spot. Officers then immediately searched the car and took an inventory of its contents. The car was then towed to a private impounding facility. Two weeks later a warrant was obtained for the search of appellant's business premises, and a week after that a second warrant was issued for search of a brief case which had been discovered in the search of the car. Evidence obtained at the time of the inventory and from both warranted searches was introduced at trial. Appellant contends that all three searches were unreasonable: the search of the car, since it was without warrant; the other searches, since the affidavits on which the warrants issued were insufficient.

### 1. *The Inventory Search of the Car*

■ A Eugene police department regulation (Policy and Procedure Statement No. 17) provides for impounding of vehicles when they are parked in violation of law, "such as blocking * * * driveways," and where the owner is arrested and there is no one to whom the vehicle can be released. Nothing is said in the regulation respecting the taking of an inventory of the car's contents or the safeguarding or storage of such contents. At the hearing on motion to suppress, the officer who had searched the car testified that one of his motives in citing the car and impounding it was to justify an investigatory search; that he had been a detective for approximately four years and had issued a similar citation on only one other occasion; that the citation on that occasion, too, has been for the purpose of searching the car. The magistrate, entertaining the motion to suppress, ruled that on impounding the car the officer had a "duty to keep a record of the property impounded so that it can be returned to the owner"; that in these circumstances the motive of the officer in inventorying the contents was irrelevant. The motion to suppress the items seized from the car was denied. The district court agreed and the items in question were received in evidence.

On appeal, the government contends that the only question is whether the impounding of the car was pursuant to standard police procedure. If it was, it is contended, then it follows as matter of law that an inventory was proper and that the search was reasonable under the fourth amendment.

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), an automobile was impounded by the police of Vermillion, South Dakota, for overtime parking in a restricted zone. The car was taken to the city impound lot. From the outside of the car, a police officer observed a watch on the dashboard and other items of personal property in plain view. The officer then ordered the car unlocked and the contents of the car inventoried pursuant to police regulation. *Id.* at 380 n.6, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (Powell, J., concurring). The Court held the inventory search to be reasonable under the fourth amendment. The Court noted that the practice followed by the police in Vermillion in inventorying and safeguarding the contents of impounded cars was standard police procedure generally followed throughout the country.

The government here contends that since inventorying of impounded cars is, throughout the country, the practice generally followed by the police, it necessarily follows that it was reasonable here; that the only question, therefore, is whether the im-

pounding itself was proper.[1] We cannot agree. *Opperman* does not go this far. Quite the contrary is suggested. The Court states:

"[T]here is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive."

428 U.S. at 376, 96 S.Ct. at 3100 (footnote omitted).

Here it is clear from the testimony of the searching officer that the citation, the impounding and the inventorying all were for "an investigatory police motive." This alone is sufficient to conclude that the warrantless search of the car was unreasonable.[2]

But even if an investigatory motive was not shown, our decision would be the same because the inventorying of impounded cars was not shown to be a routine practice and policy of *this* police department, as was the case in *Opperman*.[3] Certainly the record is clear that it was not the routine practice of the searching officer. It is the inventorying practice and not the impounding practice that, if routinely followed and supported by proper noninvestigatory purposes, could render the inventory a reasonable search under *Opperman*. The fact that other police departments routinely follow such a practice may give support to the proposition that such a practice, if locally followed,

is reasonable. It does not, however, render reasonable a search where the inventorying practice is not locally followed and the search, thus, is a departure from local practice. A locally followed practice gives some assurance that a particular car was not singled out for special searching attention. Absent such assurance some special reason for the taking of safeguarding or security precautions that are not customarily taken should exist if the intrusion resulting from the taking of such precautions is to be rendered reasonable under the fourth amendment.[4]

We conclude that the search of the car was in violation of the fourth amendment, and that it was error not to grant the motion to suppress evidence discovered in the course of that search.

## 2. The Warranted Searches

◼ As to the briefcase, the search of the car produced it and the unreasonableness of that search tainted the seizure and subsequent search of the briefcase as well. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The motion to suppress should have been granted as to the contents of the briefcase.

◼ As to the search of appellant's premises, appellant contends that the affidavit on which the warrant issued was insufficient under *Aguilar v. Texas,* 378 U.S. 108,

1. We assume, for the purposes of discussion, without deciding, that the *impounding* was proper in this case.

2. Our analysis is confined to situations where an automobile search is conducted without a warrant and without probable cause. The "automobile exception" to the warrant requirement arises where there is probable cause and exigent circumstances due to an automobile's mobility. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *see generally* Moylan, *The Inventory Search of An Automobile: A Willing Suspicion of Disbelief,* 5 U.Balt.L.Rev. 203 (1976).

3. It was also the case in decisions of this court involving the taking of an inventory. In *United States v. Friesen,* 545 F.2d 672, 673–74 (9th Cir. 1976), the inventorying was conducted in ac-

cord with proper (routine) police procedures. 545 F.2d at 673 n. 1. The same was clearly true in *Cardenas v. Pitchess,* 506 F.2d 1224, 1225 (9th Cir. 1974), and *United States v. Mitchell,* 458 F.2d 960, 961 (9th Cir. 1972), and was apparently the case in *United States v. Jamerson,* 549 F.2d 1263, 1271 (9th Cir. 1977).

4. Such circumstances existed in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), where it was feared that, absent safeguarding, a pistol might fall into the hands of thieves. The same could be said of *Opperman,* where valuables in plain view might have provided an incentive for theft. *See also Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), *and compare with Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967).

84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The affidavit was made by a Eugene police officer assigned to the detective division and responsible for investigating fraud cases. The affidavit occasionally resorts to such language as "through my own investigation I learned * * *." It also relates information obtained from a special investigator for Mastercharge Western States Bank Card Association, using such language as "Mr. Conlin determined through his own independent investigation * * *." Appellant contends that in these respects the affidavits do not set forth facts from which a magistrate could make an independent judgment as to the reliability of the information. We disagree. The information to which such language referred was of the kind that a routine check by experienced investigators would disclose, such as that certain information supplied in applying for credit cards (e.g., names and addresses) was false. That such information was obtained from reliable sources can readily be inferred. In addition, the affidavit contained highly detailed information setting forth the nature and underlying circumstances of the affiant's personal investigation. *Cf. Rutherford v. Cupp,* 508 F.2d 122, 123 (9th Cir. 1974), *cert. denied,* 421 U.S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975); *United States v. Burke,* 517 F.2d 377, 380–81 (2d Cir. 1975). We conclude that it was not error to deny suppression as to the evidence obtained from appellant's premises.[5]

Reversed and remanded with instructions that the motion to suppress be granted as to evidence obtained from the search of the car and the briefcase, and for further proceedings.

SNEED, Circuit Judge (concurring):

I join in Judge Merrill's opinion; however, it is appropriate I believe for me to set forth my understanding of that portion of the opinion which pertains to the failure of the government to demonstrate that the inventory search in this case was pursuant to routine practice. Judge Merrill's opinion which deals with this issue, p. 444, follows closely the approach of Mr. Justice Powell's concurring opinion in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Both justify an inventory search of an automobile by police without a warrant only in those situations in which, to use Mr. Justice Powell's phrase, "no significant discretion is placed in the hands of the individual officer." *Id.* at 384, 96 S.Ct. at 3104. Mr. Chief Justice Burger's opinion in *Opperman,* in which Mr. Justice Powell and three other Justices joined, assumed that the search before the Court was "a routine inventory search of an automobile lawfully impounded by police," *id.* at 365, 96 S.Ct. at 3095, and devoted itself substantially to showing that such a search did not contravene the Fourth Amendment. In doing this it did not specifically emphasize the elimination of significant discretion on the part of the searching officer to the extent this was done by Mr. Justice Powell in his concurring opinion.

This reduced specific emphasis in Mr. Chief Justice Burger's majority opinion no doubt has led the government in this case to argue that if the impoundment was pursuant to standard police procedure the inventory search was proper because it is a practice followed generally by the police throughout the country. Judge Merrill's opinion makes clear that merely because the police may have no significant discretion in *impounding* a car it does not follow that they may not have significant discretion in conducting an inventory search of the car so seized. Where such discretion exists with respect to the warrantless search, *Opperman* does not insulate it from Fourth Amendment attack. The fact that officers in another locality may have had no significant discretion in conducting a similar inventory search, because of local proce-

---

5. In light of our disposition of the case, we find it unnecessary to consider appellant's additional contention that the district court abused its discretion in refusing to reopen the case to permit the introduction of newly discovered evidence.

dures requiring such a search, does not serve to erect *Opperman's* shield in a situation in which no such procedures exist.

This is a reasonable conclusion and it has led me to join this portion of Judge Merrill's opinion. I do hasten to point out, however, that my reading of it does not give comfort to those who might construe it to mean that to establish a routine practice of inventory searches it is necessary to conduct an extended evidentiary hearing in each case on the assumption that minor deviations from the required routine practice will be sufficient to remove *Opperman's* shield. I should think that a showing that warrantless inventory searches of lawfully impounded cars are required by proper regulations of appropriate authorities to be conducted routinely would be sufficient to come within the reach of *Opperman* in the absence of a showing, by a person having standing to assert Fourth Amendment rights, that departures from such regulations have been substantial. Should a showing of substantial departures be made the burden would be upon the prosecution to prove that notwithstanding these departures the inventory search was pursuant to a routine in which "no significant discretion [was] placed in the hands of the individual officer." A procedure of this nature is in keeping with the presumption of regularity to which actions by public officials are entitled.[1]

---

1. Absent proof of a substantial departure from official procedures, a presumption of regularity attaches to police action which allows the court to presume that the police in its actions has discharged its official duty and complied with any relevant regulations and procedures. *Gallego v. United States,* 276 F.2d 914 (9th Cir. 1960); *see United States v. Weldon,* 422 F.2d 800 (9th Cir. 1969), *cert. denied,* 398 U.S. 941, 90 S.Ct. 1855, 26 L.Ed.2d 275 (1970).