Commonwealth *vs.* Dennis R. Ford.

Middlesex.    November 6, 1984. — April 4, 1985.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & Lynch, JJ.

*Search and Seizure*, Automobile. *Constitutional Law*, Search and seizure.

A police officer's opening of the trunk of an impounded automobile for the purpose of securing certain personal property he had observed in the passenger compartment after the arrest of the driver was a search for purposes of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. [423-424]

A police officer's opening of the trunk of an impounded automobile for the purpose of securing certain personal property he had observed in the passenger compartment after the arrest of the driver was a search unreasonable per se under art. 14 of the Massachusetts Declaration of Rights in the absence of standard police procedures providing for such a search. [424-426] Lynch, J., dissenting.

Article 14 of the Massachusetts Declaration of Rights required the exclusion of evidence of a rifle found in the trunk of an impounded automobile by a police officer when he opened the trunk for the purpose of securing certain personal property he had observed in the passenger compartment after the arrest of the driver, where there were no standard police procedures providing for such a search. [426-427] Lynch, J., dissenting.

Complaint received and sworn to in the Waltham Division of the District Court Department on December 4, 1981.

On appeal to the jury session of the Framingham Division, a motion to suppress was heard by *Robert A. Belmonte*, J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Pamela L. Hunt*, Assistant District Attorney, for the Commonwealth.

*Maureen B. Brodoff* for the defendant.

Wilkins, J. The defendant was convicted of unlawfully carrying a firearm under his control in a motor vehicle in viola-

tion of G. L. c. 269, § 10 (*a*). Officer William Chase of the Watertown police department found the firearm in plain view when he opened the motor vehicle's locked trunk to place eight-track tapes in it for safekeeping. He had seen the tapes in the passenger compartment of the motor vehicle which the defendant had been operating when Chase arrested him on an outstanding warrant.

Following his conviction at a bench trial in a District Court, the defendant appealed to the District Court jury session and filed a motion to suppress the rifle (and other items), alleging that the intrusion into the trunk of the motor vehicle violated his rights under the Fourteenth Amendment to the Constitution of the United States (and under the Fourth Amendment) and under art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. That motion was denied. He was found guilty by a jury and appealed to the Appeals Court. The Appeals Court reversed the conviction, holding that the intrusion into the trunk was a search for constitutional purposes and that the intrusion, which it characterized as a "storage search," was unreasonable because it was not made pursuant to standard police procedures. *Commonwealth* v. *Ford,* 17 Mass. App. Ct. 505, 507-509 (1984). The Appeals Court left open the question whether the search would have been reasonable if it had been conducted pursuant to standard procedures. *Id.* at 509. We agree with the Appeals Court's conclusions, but base our decision explicitly on State constitutional grounds.

We summarize the facts found by the motion judge and presented by Officer Chase in his testimony at the hearing on the motion to suppress. In the early hours of December 4, 1981, Officer Chase was on routine patrol in Watertown. He saw the defendant operating a motor vehicle and, aware that there was an arrest warrant outstanding against the defendant, stopped the vehicle. The defendant, who was alone, produced a license but no registration. He told Officer Chase that he was waiting for title on the vehicle before registering it. Officer Chase arrested the defendant and took him to the police station, where Officer Chase learned from the Registry of Motor Vehi-

cles that the vehicle was unregistered. He decided to remove the vehicle from the street where, because of the coincidence of where it had been stopped, it was parked in a restricted area. A private tow truck was called, and the officer returned to the motor vehicle.

Because he knew that personal property had been stolen from vehicles that had been towed and stored by the private tow company, the officer reached into the vehicle to secure its contents. As he removed the ignition key from the defendant's key ring, Office Chase noticed eight-track tapes on the seat and on the floor of the passenger side of the vehicle. He opened the locked trunk in order to place the tapes in the trunk and saw the rifle. Office Chase testified that the Watertown police department did not have any specific procedure for securing property found in a vehicle that was about to be towed, but that, unless it was particularly valuable, most officers placed personal property seen in a vehicle's passenger compartment in the trunk, left the ignition key with the car, and took all other keys to the station.

The motion judge concluded that Officer Chase did not intend to search the vehicle, that he did not expect to find contraband, that he had a legitimate reason for opening the trunk, and that the rifle was in plain view. He accordingly denied the motion to suppress.

1. The Commonwealth argues that there was no search in the constitutional sense because Officer Chase was not looking for anything when he opened the trunk of the motor vehicle. See *State* v. *Tully*, 166 Conn. 126, 131-133 (1974); Model Code of Pre-Arraignment Procedure § SS 210.1 (1) (1975). We reject this argument and agree with the Appeals Court that, whatever a police officer's intentions may be, when he intrudes into an area in which a person had a reasonable expectation of privacy, it is a search for constitutional purposes. "In our view the sounder course is to recognize that the Fourth Amendment [and art. 14 govern] all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness.

. . . This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search.'" *Terry* v. *Ohio*, 392 U.S. 1, 17-18 n.15 (1968). Thus a search occurs whenever "an expectation of privacy that society is prepared to consider reasonable" is infringed. *United States* v. *Jacobsen*, 466 U.S. 109, 122 (1984). We think there was a search for the purposes of the Fourth Amendment. *Commonwealth* v. *Ford*, 17 Mass. App. Ct. at 507, and authorities cited. We hold, in any event, that it was a search for the purposes of art. 14 of the Declaration of Rights. The officer's state of mind may be significant in determining whether the search was reasonable or unreasonable, but it is not significant in determining whether there was a search in this case.[1]

2. We turn then to the question of the reasonableness of the intrusion. The parties have discussed by analogy cases involving inventory searches. In *South Dakota* v. *Opperman*, 428 U.S. 364 (1976), the Supreme Court of the United States upheld the seizure of contraband found in the course of an inventory search, pursuant to standard police procedures, of the unlocked glove compartment of a locked, impounded motor vehicle. The Court stated generally that "inventories pursuant to standard police procedures are reasonable," *id.* at 372, and noted, in discussing *Cady* v. *Dombrowski*, 413 U.S. 433, 436 (1973), that "the protective search was carried out in accordance with *standard procedures* in the local police department, . . . a factor tending to ensure that the intrusion would be limited

---

[1] This case does not involve an entry into an impounded vehicle either to secure the vehicle or to secure property in plain view with the resulting discovery of other property in plain view within the passenger compartment. In such a case, that other property could be seized reasonably and its admission in evidence would be proper. See *Harris* v. *United States*, 390 U.S. 234, 236 (1968) (evidence in plain view seized in securing an impounded vehicle, admissible); *State* v. *Tully*, 166 Conn. 126, 136-137 (1974) (evidence found in plain view on entering a vehicle with a broken window to remove personal property for safekeeping, admissible). If, for example, Officer Chase had found a rifle in plain view inside the passenger compartment of the vehicle when he entered it to remove keys and subsequently to secure the tapes, the seizure of the rifle would have been constitutionally proper. In the case before us, however, we are concerned with an intrusion into a locked trunk.

in scope to the extent necessary to carry out the caretaking function," *South Dakota* v. *Opperman, supra* at 374-375 (emphasis in original). Similarly, in his concurring opinion in the *Opperman* case, Justice Powell emphasized that, when "[i]nventory searches are conducted in accordance with established police department rules or policy," officers cannot "make a discretionary determination to search" and "there is no significant danger of hindsight justification." *Id.* at 383 (Powell, J., concurring). We have also noted the importance of standard police procedures when an inventory search is conducted, *Commonwealth* v. *Wilson*, 389 Mass. 115, 117 (1983); *Commonwealth* v. *Matchett*, 386 Mass. 492, 510 (1982), and have suggested that a particular inventory search of a vehicle's trunk conducted in accordance with standard police procedures may have been resonable under the Fourth Amendment. See *Commonwealth* v. *Hason*, 387 Mass. 169, 178 (1982).[2]

We need not decide whether the same principles apply to storage searches and inventory searches. There are, however, differences between the two procedures.[3] Nor need we decide

[2] The question whether an inventory search of a locked trunk is constitutionally permissible has not expressly been answered by the Supreme Court of the United States and has been variously answered by other courts. See *South Dakota* v. *Opperman, supra* at 385 n.1 (Marshall, J., dissenting). Compare *United States* v. *Wilson*, 636 F.2d 1161, 1163-1165 (8th Cir. 1980) (may not inventory trunk), with *United States* v. *Edwards*, 577 F.2d 883, 893-894 & n.23 (5th Cir.), cert. denied, 439 U.S. 968 (1978), and *United States* v. *Martin*, 566 F.2d 1143, 1145 (10th Cir. 1977) (allowing trunk inventories when made pursuant to standard procedures). Some State courts have dealt with the question of trunk inventories under their own Constitutions and have arrived at different conclusions. Compare *State* v. *Sawyer*, 174 Mont. 512, 517-518 (1977) (no trunk inventories), *State* v. *Opperman*, 247 N.W.2d 673, 675 (S.D. 1976) (safeguarding permitted only of articles in plain view), and *State* v. *Goff*, 166 W.Va.

n.7 (1980) (272 S.E.2d 457, 460, 462 n.7 [W.Va. 1980]) (no trunk inventories), with *State* v. *Fortune*, 236 Kan. 248, 256-258 (1984), and *State* v. *Prober*, 98 Wis. 2d 345, 351, 353-355 (1980) (inventory search of trunks permissible). There is no need to decide in this case whether the Fourth Amendment or art. 14 prohibits generally an inventory or storage search of a vehicle's trunk.

[3] One difference, as we have noted, is the purpose of the police officer's intrusion. Additionally, the need to open a locked trunk differs in the two situations. In this case, there was no need to open the locked trunk in order to secure the tapes, and thus that intrusion may well have been less reasonable

whether the motion judge was correct in concluding that the particular circumstances of the storage search of the trunk were reasonable. We agree instead with the Appeals Court that, to be lawful, any such search must at least be conducted according to standard procedures established by the police department. Because there is no basis on this record in this case for finding that the storage search in this case was conducted pursuant to standard procedures established by the Watertown police department, we conclude that the search was unreasonable.

There may be some question whether an inventory or storage search of the locked trunk of a vehicle impounded on a public way must be conducted pursuant to standard police procedures in order to meet the requirements of the Fourth Amendment. We, therefore, state, as a separate, adequate, and independent ground, that such a search must at least be made pursuant to such procedures in order to satisfy art. 14 of the Declaration of Rights.

We are thus holding that art. 14 of the Declaration of Rights requires the exclusion of evidence seized during a storage search not conducted pursuant to standard police procedures. We have recently considered claims of exclusion based on art. 14 but in the circumstances did not have to decide whether violations of art. 14 required the exclusion of evidence. See *Commonwealth* v. *Upton, ante* 363, 365-366 (1985). Cf. *Selectmen of Framingham* v. *Municipal Court of the City of Boston,* 373 Mass. 783, 787-788 (1977) (civil case; evidence excluded as a matter of Massachusetts law). We have consistently noted in recent years the possibility that art. 14 affords more substantive protection to criminal defendants than prevails under the Constitution of the United States. *Commonwealth* v. *Upton, supra* at 373, and cases cited. In *Commonwealth* v. *Sheppard, ante* 381, 391 (1985), we concluded on the facts that a violation of art. 14 did not require exclusion of evidence. This case, however, involves circumstances in which art. 14

than in a case in which the opening of a locked trunk is necessary to conduct an inventory search. The defendant's key ring had to be taken to the police station, and it is unclear on this record why the tapes could not have gone along with the key ring.

requires exclusion of evidence. We suspect the Supreme Court of the United States would reach the same conclusion under the Fourth Amendment.

A warrantless search conducted without consent, without probable cause, and without exigent circumstances justifying the intrusion (such as protection against potential danger), but conducted pursuant to standard procedures, will have a greater chance of meeting constitutional requirements than an ad hoc practice such as is involved in this case. A search pursuant to standard procedures will eliminate any element of discretion in the decision to conduct an inventory or a storage search. We do not decide, however, or imply that, if a storage search is conducted pursuant to standard police procedures, evidence seized in the search will be admissible.[4]

3. The motion to suppress should have been allowed. The judgment is reversed, and the verdict set aside. It may be that the defendant is entitled to entry of a judgment of not guilty. The case is remanded to the District Court for consideration of that question.

*So ordered.*

---

[4] The dissent surprisingly faults the court for not espousing standards on which its decision is based. We have indicated standards and the basis for exclusion of the evidence in this case. This was a warrantless search. Searches pursuant to a search warrant present different questions concerning the exclusion of evidence. Here, there was neither probable cause to search nor any special circumstances, such as an emergency, to justify a warrantless search without probable cause. However the dissent may view the matter, the fact remains that in an inventory search a vehicle's trunk has to be opened and in a storage search it does not. If a storage search is to be constitutionally reasonable, action pursuant to established police procedures seems appropriately required. We see no reason to "decide" a case not before us, and thus we leave open the question of the constitutionality of a storage search conducted pursuant to established police procedures.

LYNCH, J. (dissenting). This case presents the question whether the only evidence of a crime should be suppressed because a "storage search" was conducted in the absence of standardized police procedures for doing so. After deciding that the Fourth Amendment to the United States Constitution requires suppression, the majority goes on to create for the first time an exclusionary rule under art. 14 of the Declaration of Rights to the Constitution of the Commonwealth. I do not agree that the Fourth Amendment mandates suppression here, and I would not create an exclusionary rule under art. 14 to exceed the protections already provided by the Fourth Amendment. Accordingly, I dissent.

1. *Fourth Amendment.* It is not at all clear, as the majority implies, that the Fourth Amendment requires the suppression of evidence in every inventory or storage search where standard police procedures are nonexistent or not followed. In inventory search situations, the Supreme Court has steadfastly avoided applying strict tests, but instead has consistently focused on the "reasonableness" of the search under all of the circumstances. See, e.g., *South Dakota* v. *Opperman,* 428 U.S. 364, 372-373 (1976); *Cooper* v. *California,* 386 U.S. 58, 59 (1967). It has expressly rejected the creation of any "detailed formula" to decide these cases. *Cady* v. *Dombrowski,* 413 U.S. 433, 448 (1973). While the Supreme Court has held that police procedures are "a factor" in deciding if an inventory search is reasonable (*South Dakota* v. *Opperman, supra* at 375), it has never held that inventory searches are per se unreasonable if not conducted pursuant to those procedures. It is therefore not illogical to conclude that "the reasonableness of a particular inventory search may be obvious even in the absence of direct evidence concerning a police department's standard procedures." *United States* v. *Prescott,* 599 F.2d 103, 106 (5th Cir. 1979). Such a view is even more persuasive in a case such as this, "where valuables in plain view might have provided an incentive for theft." *United States* v. *Hellman,* 556 F.2d 442, 444 n.4 (9th Cir. 1977). By deciding that storage searches not necessarily conducted in accordance with procedures established by the local department are *always* unreason-

able,[1] the majority ignores the Supreme Court's admonition that "[t]he test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." *South Dakota* v. *Opperman, supra* at 373, quoting *Coolidge* v. *New Hampshire,* 403 U.S. 443, 510 (1971) (opinion of Black, J.). Instead, we are to balance the defendant's rights and the benefits of exclusion against legitimate government interests and the costs of exclusion. See *United States* v. *Leon,* 468 U.S 897, 908-909 (1984); *Illinois* v. *Lafayette,* 462 U.S. 640, 644 n.1 (1983).

Examining the reasonableness of the officer's action in the circumstances of this case leads me to conclude that suppression is not required by the Fourth Amendment. It is not disputed that the motor vehicle was lawfully impounded, and it seems clear that probable cause was not required to impound the vehicle or to conduct a storage search. See *South Dakota* v. *Opperman, supra* at 370 n.5. The offcer's uncontradicted testimony was that, although no "specific procedure" existed, "the general procedure . . . used by most officers is to securing [*sic*] any personal property that might be found inside of the passenger compartment to secure it in the trunk of the vehicle."[2] The motion judge specifically found that the officer had acted in good faith,[3] and the defendant has not contested that finding.

---

[1] I respectfully suggest that insubstantial departures from such regulations will not be grounds for suppression under either the Fourth Amendment or art. 14. See *United States* v. *Hellman,* 556 F.2d 442, 446 (9th Cir. 1977) (Sneed, J., concurring); *Commonwealth* v. *Sheppard, ante* 381, 391 (1985) (*Sheppard II*).

[2] The officer testified finding valuables roughly fifty times in the past, and that "[t]he overwhelming majority of the time . . . I have secured them in the trunk of the car." He did acknowledge that there were occasions when he felt "that the value of the item warranted bringing it directly to the station" (one example was a mink coat).

[3] The judge stated: "I conclude that the police officer was attempting to secure the property of the owner of the vehicle and in doing so he opened the trunk. I further conclude that he inadvertently observed the presence of the firearm . . . . I further conclude from the testimony of the police officer that when he entered the trunk he did not intend to search the vehicle, that he was not under any impression at the time that he would in fact find contraband . . . ."

No general, exploratory rummaging took place. See *Commonwealth* v. *Sheppard,* 387 Mass. 488, 523 (1982) (Lynch, J., dissenting) (*Sheppard I*), rev'd, 468 U.S. 981 (1984).

The majority attempts to distinguish a storage search from an inventory search, implying that a storage search is somehow more intrusive and less justified. But the distinctions cited by the majority are irrelevant. In both cases, the police act to protect another's property while it is in police custody and to protect themselves against claims of loss or theft.[4] *South Dakota* v. *Opperman, supra* at 369. The storage search in this case resulted when valuables in plain view were placed in a locked trunk for security. Unlike an inventory search, the officer did not open the glove compartment or look under the seats. Unlike an inventory search, the officer was not even looking for anything when he opened the trunk. Although the majority apparently bases its decision on prevention of "a discretionary determination to search," there is no evidence supporting a conclusion that the officer did so in this case, or that the search was conducted as a pretext. *Id.* at 383 (Powell, J., concurring). See *Commonwealth* v. *Matchett,* 386 Mass. 492, 511 (1982). To say that in these circumstances the storage search was more intrusive than an inventory search simply ignores reality. And the fact that less intrusive alternatives may have been available does not necessarily or invariably obviate the reasonableness of the action. *Illinois* v. *Lafayette, supra* at 647-648.

Furthermore, as a matter of policy, there is no justification for exclusion in this case. Two principles are generally cited to justify application of the exclusionary rule — the deterrence of police misconduct and the protection of "judicial integrity." See 1 W. LaFave, Search and Seizure § 1.1, at 17 (1978). The majority takes issue only with the lack of standardized, written procedures, not with the reasonableness of the officer's actions in this case. Logically, then, applying the exclusionary rule here serves no substantial deterrent function. *United States* v. *Leon, supra* at 907 n.6. If there is any doubt, the majority

[4] There was uncontradicted testimony that the Watertown police had past complaints about property stolen from vehicles in the lot where the defendant's automobile was impounded.

also does not question the officer's good faith; nor could it, given the judge's explicit, uncontradicted findings on that issue. Since exclusion can have no deterrent effect when police act in good faith, reasonably held (*id.* at 3419; *Commonwealth* v. *Nine Hundred & Ninety-two Dollars,* 383 Mass. 764, 771 [1981]), deterrence is no ground for exclusion here. The majority seeks to deter the possibility of future abuse that might conceivably result from a lack of written, standardized procedures. While that may be a laudable policy goal, it has no application to the facts of this case.

Likewise, exclusion here would do nothing to advance judicial integrity. Considerations of judicial integrity presuppose a wilful constitutional violation. See *United States* v. *Peltier,* 422 U.S. 531, 538 (1975); *Selectmen of Framingham* v. *Municipal Court of the City of Boston,* 373 Mass. 783, 787 (1977); *Carey* v. *Zayre of Beverly Inc.,* 367 Mass. 125, 130 (1975). There is no evidence of such a wilful violation in this case.

Given that "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office" (*South Dakota* v. *Opperman, supra* at 367), I would hold that, in the circumstances of this case, the officer's action was reasonable and does not require suppression under the Fourth Amendment.

2. *Article 14.*   Recognizing that its decision under the Fourth Amendment is open to "some question," the majority seeks firmer ground for the foundation of its opinion, and finds it in art. 14. With nary a hint of the policies justifying its action, the court creates an exclusionary rule under art. 14 for the first time in the history of the Commonwealth. The court finds in art. 14 a rule that has remained undiscovered since 1780 and that has been specifically rejected when asserted. See, e.g., *Commonwealth* v. *Sheppard, ante* 381, 391 (1985) (*Sheppard II*); *Commonwealth* v. *Wilkins,* 243 Mass. 356, 359 (1923); *Commonwealth* v. *Dana,* 2 Met. 329, 334 (1841). With considerable thought, this court recently declined, for various reasons, to create an exclusionary rule under art. 14 in both *Commonwealth* v. *Upton, ante* 363 (1985) (*Upton II*), and *Sheppard II, supra.* In fact, in *Upton II, supra* at 365, the court re-

iterated that it "has never accepted the concept of an exclusionary rule under the State Constitution when a search violated the requirements of art. 14." Today the majority does accept such a concept, treated in but two footnotes of the defendant's brief.[5]

By merely stating in conclusory language that "[t]his case . . . involves circumstances in which art. 14 requires exclusion of evidence" (*ante* at 426-427) the court gives no guide for determining when exclusion is appropriate. The majority has thus created a standard that is "unacceptably shapeless." *Upton II, supra* at 373, quoting *Commonwealth* v. *Upton,* 390 Mass. 562, 574 (1983) (criticizing the "totality of the circumstances" test for probable cause). Compare *State* v. *Opperman,* 247 N.W.2d 673, 674-675 (S.D. 1976) (to be "reasonable" under South Dakota Constitution, inventory searches must be conducted without investigative motive and limited to articles in plain view).

Furthermore, the majority fails to apply the very standards adopted by this court in *Sheppard II.* In that case, the court held that exclusion was not required because there was no prejudice to the defendant, defining prejudice in terms of the substantiality of the asserted violation. *Id.* at 391 & n.8. In determining substantiality, we are to consider particularly the extent of the deviation from lawful conduct, the extent to which the violation was wilful, the extent to which privacy was invaded, the extent to which exclusion will tend to prevent violations of the law, and the extent to which the violation prejudiced the defendant's ability to defend himself. See *Sheppard II, supra* at 391 n.8; *Sheppard I, supra* at 507-508 n.20. The conspicuous absence of any analysis along the lines suggested in *Sheppard II* is not surprising, since it is manifestly clear that none of the principles in that analysis would justify exclusion here. The majority has cited what it considers to be significant distinctions between this case and *Sheppard II,* but it

---

[5] Compare our treatment in *Sheppard II* and *Upton II,* where on remand from the Supreme Court we invited additional briefs directly addressing this issue and heard further argument.

has not provided any new standards for deciding cases which it considers distinguishable. Moreover, nothing in the majority opinion explains why the test so recently adopted in *Sheppard II*, where the court similarly faced the question whether a search was "unreasonable" within the meaning of art. 14, would be inappropriate in these circumstances.[6]

As I have already indicated, the twin principles generally said to justify an exclusionary rule — deterrence and judicial integrity — are not advanced by exclusion here. Moreover, I believe it is unwise to create an exclusionary rule under art. 14, and I see no justification in this case to create a rule that goes beyond protection already afforded by the Fourth Amendment.

The Fourth Amendment's exclusionary rule is "a judicially created remedy," not a constitutional right of the accused. *United States* v. *Calandra*, 414 U.S. 338, 348 (1974). *United States* v. *Leon*, 468 U.S. 897, 906 (1984). This court has expressly accepted that approach under art. 14. *Sheppard II, supra* at 391. See *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 770-772 (1981). Whether or not exclusion is required under art. 14 presents a broad issue of policy, to be decided by an analysis of whether exclusion is appropriate in light of the principles which have traditionally involved the exercise of our power to remedy the violation of constitutional rights.

The Supreme Court, in its wisdom, created the Federal exclusionary rule in *Weeks* v. *United States*, 232 U.S. 383 (1914), and extended its application to State court proceedings in *Mapp* v. *Ohio*, 367 U.S. 643 (1961). In the more than seventy years of its Federal existence, and the twenty years of its application to the States, the rule has become more, not less, confusing to administer on both the law enforcement and judi-

---

[6] It is true that, as the majority notes, there was no warrant in this case. Nor were exigent circumstances involved. However, proper inventory and storage searches, by definition, presume a lack of investigative intent. For that reason, neither a warrant nor exigent circumstances have, until today, been deemed necessary to conduct these routine, administrative functions. See *South Dakota* v. *Opperman, supra* at 370 n.5.

cial levels. I am not convinced that departures from judicially acceptable police practice which nevertheless meet Fourth Amendment standards could not be remedied more effectively in other ways than by creation of a State exclusionary rule. See, e.g., *Berry* v. *Commonwealth,* 393 Mass. 793, 798 (1985) ("Common law principles may provide greater protections than either the State or the Federal Constitution requires"). The experience of the Federal rule should be sufficient to encourage us to consider other paths before striking out on a course whose pitfalls are only too apparent.

The primary justification for an exclusionary rule is the deterrence of police misconduct. *United States* v. *Calandra, supra* at 347. *Mapp* v. *Ohio, supra* at 656. *Sheppard I, supra* at 502. 1 W. LaFave, Search and Seizure § 1.1, at 17 (1978). But there is little or no evidence that the exclusionary rule effectively serves this purpose. See, e.g., Oaks, Studying the Exclusionary Rule in Search and Seizure, 37 U. Ch. L. Rev. 665 (1970). See also Harris, The Return to Common Sense: A Response to "The Incredible Shrinking Fourth Amendment," 22 Am. Crim. L. Rev. 25, 42-44 (1984). On the other hand, it is remarkably efficient, in cases where it applies, at keeping relevant and highly probative evidence from being considered by the trier of fact. Furthermore, even assuming that there may be cases where it is appropriate to exclude evidence under art. 14 (see *Upton I, supra* at 580 n.1 [Lynch, J., dissenting]), I have already discussed why this case is not one of them.

The exclusionary rule is also said to be the defender of "judicial integrity." 1 W. LaFave, *supra.* This justification was designed in an effort to prevent courts from becoming "accomplices in the *willful* disobedience of a Constitution they are sworn to uphold" (emphasis added). *Elkins* v. *United States,* 364 U.S. 206, 223 (1960). See *Selectmen of Framingham* v. *Municipal Court of the City of Boston,* 373 Mass. 783, 787 (1977). Considering that judicial integrity in this Commonwealth could also be preserved in other, less doctrinaire ways (for example, using our general superintendence power under G. L. c. 211, § 3), it becomes a very slender reed on which to base such a pervasive rule. Perhaps that is why the court in

*Sheppard I, supra* at 502, stated that "judicial integrity fails as a substantial, independent support for the rule [of exclusion]." Even granting its precarious foundation as support for an exclusionary rule, it is clear that "the imperative of judicial integrity, in this particular instance," is not at stake, since no wilful violation occurred. *Sheppard I, supra* at 518 (Liacos, J., concurring).

I agree with the majority's strong hint that police departments should quickly adopt written procedures governing storage and inventory searches, to avoid these questions in the future. However, the majority invites unnecessary litigation by refusing to state that a storage search conducted pursuant to reasonable, standardized, and written procedures will be upheld, thus failing to identify clearly just what it is about storage searches in general or this search in particular that offends art. 14. Presumably, the court's implicit admonition to police departments requiring such procedures is intended to be more than an academic exercise. Nevertheless, the opinion leaves open to doubt whether *any* storage or inventory search will be considered compatible with art. 14.[7] I do not believe that, presented with such a case, this court would go so far.

3. *Conclusion.* In sum, I see no sufficient justification for creating an exclusionary rule under art. 14 that goes beyond the reach of the Fourth Amendment. If the Fourth Amendment does not protect against some form of improper police conduct, another remedy can be found that is less likely to extract the enormous social cost and confusion engendered by an exclusionary rule. No harsh or oppressive results would follow from such a decision, since Fourth Amendment protections would still be available. I merely reject an extension of a rule which makes a defendant's desire to conceal contraband a legitimate privacy expectation. Cf. *United States* v. *Jacobson,* 466 U.S.

---

[7] The majority identifies lack of consent, lack of probable cause (and the concomitant lack of a warrant), and lack of exigent circumstances as problems with storage searches. But few knowledgeable defendants will consent to searches of any kind, while probable cause and exigent circumstances will rarely be present, given the nature of the search. These same considerations hold true for inventory searches.

109, 122-124 (1984). Therefore, I would resolve this case solely under the Fourth Amendment. Since I believe the majority has erroneously construed the protection provided by that amendment, I would reverse the decision of the Appeals Court and affirm the judge's denial of the motion to suppress.